*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0425p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 06-5464

MICHAEL ELY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 05-20129—Samuel H. Mays, Jr., District Judge.

Submitted: October 26, 2006

Decided and Filed: November 16, 2006

Before: MARTIN and COOK, Circuit Judges; BUNNING, District Judge.*

_____

**COUNSEL**

**ON BRIEF:** Randolph W. Alden, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellant. Frederick H. Godwin, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

_____

**OPINION**

_____

BOYCE F. MARTIN, JR., Circuit Judge. Michael Ely was convicted by a jury of bulk cash smuggling and making a false and fictitious material statement and representation to a Customs and Border Protection officer in violation of 31 U.S.C. §§ 5316 and 5332, and 18 U.S.C. § 1001. The jury also found that Ely's interest in the property was subject to forfeiture to the United States pursuant to section 5332. The district court subsequently sentenced Ely to five months imprisonment and five months of home detention to be served as a condition of supervised release, as well as ordering the forfeiture pursuant to the jury verdict. Ely now appeals the forfeiture and his sentence.

---

*The Honorable David Bunning, United States District Judge for the Eastern District of Kentucky, sitting by designation.

I.

Ely's conviction arose from his attempt to bring roughly $24,000 in assorted currency[1] into the United States without reporting it. Ely had been working as a contractor in the Middle East, and was returning to the United States on a flight from Amsterdam to Memphis on April 2, 2005. At the Memphis airport, Ely presented his Customs Declaration to Customs and Border Protection Officer Brandon Marlier. On the Declaration, Ely had answered "no" to the question of whether or not he was carrying currency valued at over $10,000. The Declaration explains that it is legal to carry currency into the United States, but that if the traveler is carrying more than $10,000 it must be reported to Customs. It also provides a clear definition of the term "currency."

Marlier asked Ely how much currency he was bringing into the United States, and Ely responded that he had between six and seven thousand dollars. Marlier then began a "routine bag examination," and discovered currency inside of Ely's luggage, mostly consisting of one-hundred dollar bills. Marlier informed Ely that it was legal to carry currency, but that it merely needed to be reported if it was over $10,000. Ely again informed Marlier that it was not over ten thousand dollars. Marlier then counted the money from his initial discovery, and found that it amounted to over $13,000. He then contacted his supervisor and two other customs agents. After a more thorough search they discovered an additional $7000 to $8000, and eventually discovered a total of $24,000 after taking Ely into custody. The following day, Ely was questioned by an Internal Revenue Service agent, and admitted that he knew he was carrying more than $10,000 and violated the requirement to report it. He claimed that he had wanted to wire the money to his wife from Kuwait, but had encountered difficulty doing so, and was thus carrying the cash with him without reporting it to keep the IRS from knowing about it.

Ely was indicted for three counts: knowingly concealing more than $10,000 on his person and attempting to transport it from overseas to the United States in violation of 31 U.S.C. § 5316; knowingly and willfully making a false statement to a Customs and Border Patrol officer in violation of 18 U.S.C. § 1001; and, a charge under 31 U.S.C. § 5332 (b) and (c)(3), authorizing forfeiture of the entire sum of money he was carrying upon conviction for violation of section 5316. The case was subsequently tried to a jury, which convicted Ely on all three counts, including a special verdict on count 3 authorizing the forfeiture of all the currency he was carrying.

II.

Pursuant to the special verdict on count 3, the district court ordered the forfeiture of the entire $24,000, which Ely argues was an excessive fine, imposed in violation of the Eight Amendment provision that "excessive fines [shall not be] imposed." Because he failed to raise an Eighth Amendment objection in the district court, we review the excessiveness of the fine for plain error. *United States v. Blackwell*, 459 F.3d 739, 771 (6th Cir. 2006). "'To establish plain error, a defendant must show (1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings.'" *Id.* (citing *United States. v. Abboud*, 438 F.3d 554, 583 (6th Cir. 2006)).

Ely relies largely on the Supreme Court's decision of *United States v. Bajakajian*, 524 U.S. 321 (1998), in which the Court upheld a district court's decision to limit a forfeiture for a violation of section 5316 to an amount significantly less than the amount of currency that the defendant was transporting. The facts of *Bajakajian* are similar to this case, save the fact that the defendant failed to report a significantly higher sum of money. The defendant was traveling through an airport with

---

[1]This amount included $22,490 in United States currency, in addition to the equivalent of $954.30 in European Union Euros, and the equivalent of $642.88 in Kuwaiti Dinars.

$357,144 in currency, knowingly avoided reporting it, and lied to a customs agent about the amount he was carrying. *Id*. at 325. After a search, the government seized the cash, and sought forfeiture of the entire amount. *Id*. The defendant pled guilty to the charge of failing to report, the government agreed to dismiss the false statement charge, and the court held a bench trial on the forfeiture issue. *Id*. The district court determined that the entire $357,144 was subject to forfeiture under 18 U.S.C. § 982(a)(1),[2] but that it would be grossly disproportionate to the offense for the entire amount to be forfeited, and instead ordered a forfeiture of $15,000, plus the maximum authorized fine of $5000 under the Federal Sentencing Guidelines. *Id*. at 326. The district court specifically noted that the funds were not connected to any other crime and that the defendant was carrying the money for the lawful purpose of paying a legitimate debt. *Id*. The government appealed, but the order was upheld by the Ninth Circuit, and the Supreme Court subsequently granted certiorari.

The question before the Supreme Court in *Bajakajian* was limited to whether the full forfeiture under section 982(a)(1) of the amount of money the defendant was carrying was constitutional under the Excessive Fines Clause of the Eight Amendment. *Id.* at 337 n. 11. The Court found that the forfeiture was punishment, subject to the Excessive Fines Clause, because it was "imposed at the culmination of a criminal proceeding and require[d] conviction of an underlying felony," and that it was not based on the judiciary's in rem jurisdiction over the currency itself, but rather as a result of the defendant's criminal conviction. *Id*. at 328-332. To qualify as an excessive fine under the Clause, the amount of the forfeiture had to be grossly disproportionate to the gravity of the criminal offense. *Id*. at 337. The Court stated that the defendant was merely guilty of a reporting offense, as it was permissible to transfer the money so long as it was reported and there was no connection to other illegal activities. It also looked to the Federal Sentencing Guidelines for guidance in determining the culpability associated with a violation of the reporting statute, and found it relevant that the maximum authorized fine was $5000, with a maximum sentence of six months. *Id*. These considerations "confirm[ed] a minimal level of culpability." *Id*. at 337-38. Similarly, the defendant did not cause significant harm, as there was no fraud committed on the United States, and no loss caused to the public fisc. *Id*. at 339. For these reasons, the Court agreed with the lower courts that full forfeiture would have been grossly disproportionate to the gravity of the offense. *Id*. at 339-340.

We cannot say on appeal that the district court committed plain error by ordering forfeiture of the entire $24,000, even though *Bajakajian* would have supported an excessive fines argument if Ely were to have argued the issue below. Had Ely raised an excessive fines objection in the district court, he would have been entitled to an assessment of whether the forfeiture was grossly disproportionate to the gravity of his offense, in light of factors including the nature of the offense, the connection to other illegal activities, the source and likely use of the funds, whether his conduct fit into the class the statute was designed to cover (money launderers, tax evaders, terrorism financiers, or drug traffickers), and the potential fine under the advisory guideline range. *United States v. Carpenter*, 317 F.3d 618, 627-628 (6th Cir. 2003), *vacated on other grounds*, *reinstated* 360 F.3d 591 (6th Cir. 2004).

Even if the district court erred in not analyzing whether the forfeiture was an excessive fine, it is neither obvious nor clear on appeal that the amount here was grossly disproportionate to Ely's

---

[2] This statute included a forfeiture provision that was a precursor of the present version of 31 U.S.C. § 5332. The statutory language was modified as part of the USA PATRIOT Act in 2001, by moving the forfeiture provision from 18 U.S.C. § 982 (the statute authorizing the forfeiture in *Bajakajian*) to 31 U.S.C. § 5332 (the statute authorizing Ely's forfeiture). The government advances this modification as a basis for us to find *Bajakajian* inapplicable. However, the forfeiture language of the two provisions is virtually identical, and even if Congress could circumvent the Eighth Amendment's limitations on excessive fines by modifying a statute, which would make little sense, cutting and pasting a provision of the United States Code from one chapter to another cannot be viewed as a meaningful change.

culpability in light of the factors that are relevant to examining the excessiveness of a fine. Specifically, the amount of cash subject to forfeiture is less than one-tenth of the amount at stake in *Bajakajian*. Further, Ely's potential fine under the now-advisory Sentencing Guidelines was $30,000, as compared to $5000 in *Bajakajian*. Thus, Ely's forfeiture is within his potential fine range under the Guidelines, whereas the defendant in *Bajakajian* stood to forfeit more than seventy times the amount of his maximum fine under the Guidelines. The forfeiture amount here is also well within the statutory maximum fine of $250,000 — another of the several relevant factors that can be considered in assessing gravity of the offense. *Carpenter*, 317 F.3d at 627. ("While the [*Bajakajian*] Court noted that authorized penalties are relevant, they are but one of several factors to consider in assessing the overall gravity of the offense."). Although Ely may have benefitted from a more fact-specific inquiry had he raised this issue in the district court, we cannot say at this juncture that a plain error was made in this case based on our rough comparison between the facts here and those in *Bajakajian*.

III.

Ely also appeals his sentence, claiming that the district court did not properly balance relevant factors in determining the sentence, resulting in an unreasonable sentence under 18 U.S.C. § 3553(a). Under the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), a district court is required to consult the sentencing range under the Federal Sentencing Guidelines for advisory purposes only. *United States v. McBride*, 434 F.3d 470, 476 (6th Cir. 2006). The range is then treated as "just one of the numerous factors that a district court must consider when sentencing a defendant," and the district court must also address the other factors provided for in section 3553(a). *Id*. Section 3553(a) also requires the district court to impose a sentence that is "sufficient, but not greater than necessary," to advance the factors reflected in the statute. In this case, the district court addressed Ely's guideline range, which was determined without objection from Ely to be ten to sixteen months, selected the very bottom sentence from that range, and allowed for half of the sentence to be served in home detention under U.S.S.G. § 5C1.1(c), providing five months imprisonment and five months of home detention.

We review Ely's sentence for reasonableness. *Booker,* 543 U.S. at 260-61. While a sentence that is within the advisory guideline range, like Ely's, is entitled to a presumption of reasonableness, the record must still reflect that the district court considered the relevant sentencing factors provided in section 3553(a). *United States v. Foreman*, 436 F.3d 638, 644 (6th Cir. 2006) ("A sentence within the Guidelines carries with it no implication that the district court considered the 3553(a) factors if it is not clear from the record."). Specifically, "[w]here a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006). This requirement "assures not only that the defendant can understand the basis for the particular sentence but also that the reviewing court can intelligently determine whether the specific sentence is indeed reasonable." *Id*.

Ely concedes that the district court considered the relevant factors from section 3553(a), and our review of the record confirms as much. Specifically, the district court discussed extensively the nature and circumstances of the offense, and the need to promote respect for the law, noting that Ely's violation was deliberate and that the failure to report the funds was a "serious offense." The court also addressed the need for deterrence, stating that Ely refused to concede any wrongdoing, and could thus be considered a likely repeat offender. The district court also addressed the need to protect the public, explaining that although Ely did not represent a security threat himself, he created a distraction in an airport, and willfully violated a statute that is designed to detect and prevent the funding of terrorism as well as other serious crimes. The district court also addressed the need to provide educational or vocational training for the defendant and the benefit of incarceration. The district court went on to consider the advisory guidelines sentence, and subsequently addressed

alternative available sentences and the need to avoid sentencing disparities, the need for restitution, Ely's familial responsibilities and military record, and Ely's financial situation.

Given the thoroughness of the district court's consideration of the sentencing factors, Ely does not identify any argument that he raised and the district court failed to address, but instead asks us to balance the factors *differently* than the district court did. This is simply beyond the scope of our appellate review, which looks to whether the sentence is reasonable, as opposed to whether in the first instance we would have imposed the same sentence. Because the district court considered all the relevant sentencing factors, and imposed a sentence of a reasonable length, we affirm the sentence here.

IV.

For the reasons discussed above, we affirm Ely's sentence and the full forfeiture of the currency he failed to report.