**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 10a0541n.06**

**No. 09-1231**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
**Aug 23, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Western |
| HERBERT L. LOVE, | ) | District of Michigan |
| | ) | |
| Defendant-Appellant. | ) | |

Before:     BOGGS, ROGERS, and COOK, Circuit Judges.


PER CURIAM. Herbert Love was indicted in 1994 and charged with conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(a). He pled not guilty and proceeded to a jury trial in Grand Rapids, Michigan. On June 27, 1994, however—several days into his trial—Love, who was free on an unsecured bond, failed to appear and the trial was concluded in his absence. After the close of evidence, the presiding judge instructed the jury that the government did not need to prove a specific amount of drugs were involved in the conspiracy for the jury to find Love guilty. Upon deliberation, the jury found Love guilty, without making a specific finding as to the amount of cocaine for which he was responsible.

No. 09-1231
United States v. Love

Love, as it happened, had skipped town; he eluded justice for eleven years. In 2005, however, he was eventually discovered living in Pomona, California by local police, who took him into custody and returned him to Michigan for sentencing.[1]

A Presentence Investigation Report, originally prepared in August 1994 and supplemented in 2006, indicated that the minimum statutory term of imprisonment was ten years, with a maximum of life.[2] It further indicated Love to have a criminal history category of II and a total offense level of 40 (including a base offense level of 38 that was predicated on Love's being held accountable for between 150 and 500 kilograms of cocaine, and a two-level enhancement for obstruction of justice arising from his abscondment), resulting in a Guidelines range of 324–405 months of imprisonment. The PSR nevertheless recommended a below-Guidelines sentence of 240 months "pursuant to 18 U.S.C. § 3553(a)(1) and (a)(2)(A)."

_____

[1]Love allegedly spent much of his time in Pomona doing odd jobs for senior citizens for minimal pay and providing free haircuts for homeless persons in connection with a homeless ministry at a local Baptist church. Nothing in the record suggests that he engaged in any criminal activity following his abscondment from Michigan; he was discovered as a fugitive only after providing his name to police who were investigating the mugging of one of Love's friends.

[2]The PSR appears to have assumed that a decision by the court that Love was responsible for a given amount of cocaine would affect the statutory minimum and maximum along with the applicable Guidelines range. In reality, the statutory limits on Love's sentence were fixed by the fact that he was convicted by the jury of conspiracy to distribute an undetermined amount of cocaine. Pursuant to 21 U.S.C. § 841(b)(1)(C), he could have received anywhere from zero to 240 months of imprisonment for the charged offense absent a finding that he had been previously convicted of a felony, not the ten-years-to-life range that would have obtained had the *jury* found him to have been responsible for more than five kilograms. Though the government filed an information alleging that Love had previously been convicted of a felony drug offense in Texas, a circumstance that would have increased Love's statutory maximum penalty to 360 months, Love contested the finality of that conviction and the district court apparently did not rule on that issue before issuing its original sentencing decision.

The district court sentenced Love on April 12, 2006. At that time, the judge found Love to have been responsible for between 50 and 150 kilograms of cocaine, an amount below the PSR's recommended calculation (and one that would have reduced Love's total offense level to 38, with a recommended sentencing range of 262 to 327 months), but sentenced Love to the PSR-recommended 240 months of imprisonment. *See United States v. Love*, 289 F. App'x 889, 890–91 (6th Cir. 2008). As it happened, that sentence matched the applicable statutory maximum sentence given the fact that Love had been convicted of conspiracy to distribute an unspecified amount of cocaine, but whether this was by chance or by design was not apparent from the record because the district court did not explicitly re-calculate the Guidelines range after finding a decreased drug quantity, nor did it discuss the statutory maximum penalty.

Love appealed his 240-month sentence, arguing that a jury ought to have determined the quantity of cocaine for which he was responsible, that his counsel had been ineffective for failure to raise that issue below, and that the district court erred in failing to calculate the proper Guidelines range. A panel of this court vacated the sentence and remanded for re-sentencing on the basis of the last of these grounds only, holding that, although 240 months was within the prescribed statutory range, the district court had committed procedural error by failing to calculate the applicable Guidelines range and by failing to evaluate the statutory maximum. *Love*, 289 F. App'x at 894.

The district court conducted a re-sentencing hearing on February 12, 2009. After repeating his finding that Love had been responsible for 50 to 150 kilograms of cocaine during the course of the conspiracy, the judge found Love to have a base offense level of 36, then added a two-level enhancement for the obstruction of justice caused by Love's abscondment. The judge also found

Love to have a criminal history category of II. The Guidelines version effective at that time, like the version effective in 2006, specified a range of 262–327 months of imprisonment at offense level 38 and criminal history category II. *See* U.S.S.G. Ch.5, Pt.A (Nov. 2008). Unlike at the original sentencing, at re-sentencing the judge explicitly indicated that Love had previously been convicted of a felony drug offense and that the statutory maximum was therefore 360 months rather than 240 months. However, the court found that the circumstances, particularly the fact that Love was not "a long-time criminal," warranted a below-Guidelines sentence of 204 months.

This timely appeal followed.

## II

## A

Love first argues that his sentence was substantively unreasonable, contending that an analysis of the factors the district court was required to consider under 18 U.S.C. § 3553(a) when sentencing him should have resulted in his being sentenced to no more than ten years of incarceration.

We review claims of substantive unreasonableness in sentencing for abuse of discretion. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008). "A sentence may be substantively unreasonable where the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *United States v. Martinez*, 588 F.3d 301, 328 (6th Cir. 2009) (citation, internal quotation marks, and alteration marks omitted). Sentences that fall within a properly calculated Guidelines range are entitled to a rebuttable presumption of reasonableness.

*United States v. Harmon*, 607 F.3d 233, 240 (6th Cir. 2010). Because Love's sentence is below a properly calculated Guidelines range, moreover, Love's task of persuading us that it is unreasonable is "even more demanding" than if the sentence had been within the Guidelines range. *See United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008).

Love specifically alleges that the 204-month sentence imposed upon him was greater than necessary to accomplish the goals of 18 U.S.C. §3553(a). That section cabins a sentencing judge's discretion to the extent that a criminal defendant's sentence must be "sufficient, but not greater than necessary" to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (2) afford adequate deterrence to criminal conduct; (3) protect the public from further crimes of the defendant; and (4) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a). In addition to the foregoing concerns, § 3553(a), in relevant part, also requires a sentencing judge to take into consideration the nature and circumstances of the offense and the defendant, the kinds of sentences available, the sentence recommended by the United States Sentencing Guidelines, and the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. *Ibid.*

In brief, Love's substantive unreasonableness argument contends that he did not play a major role in the drug distribution scheme; that his age and lack of criminal history make him an unlikely candidate for recidivism; that he has been rehabilitated, as demonstrated by (1) various good works in the community and lack of criminal activity during his time as an absconder and (2) self-improvement during his current incarceration; and that his co-defendants at the "top of the food

chain" received only 180 months of imprisonment, resulting in an unwarranted sentencing disparity when compared to his 204-month sentence.

Love's arguments on appeal do not demonstrate an abuse of discretion by the trial court. Rather than pointing to evidence that the court's selection of a seventeen-year sentence was arbitrary, based on impermissible factors, made without consideration of pertinent § 3553(a) factors, or made after giving an unreasonable amount of weight to any particular factor, Love largely re-argues on appeal his own view of how these factors ought to be applied to him. Indeed, his argument on appeal as to substantive unreasonableness is, with minor changes, a word-for-word reprise of the re-sentencing memorandum he submitted to the district court.

Because these arguments are carbon copies of those made to the district court, they do not address, much less overcome, the presumption that the district court's sentence based on its own evaluation of these arguments was proper. Moreover, even were we to construe Love's brief as alleging that the district court gave too little weight to his personal characteristics and other mitigating factors, and too much weight to retribution and general deterrence, such an argument "ultimately boils down to an assertion that the district court should have balanced the § 3553(a) factors differently," and, as such, is "'simply beyond the scope of our appellate review, which looks to whether the sentence is reasonable, as opposed to whether in the first instance we would have imposed the same sentence.'" *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008) (quoting *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006)).

Additionally, Love's sentence appears to reflect the trial judge's full evaluation of the § 3553(a) factors and the arguments Love presented. Though Love contends that he was a minor

distributor, the judge found that his role included both carrying and distributing cocaine and "facilitating" the conspiracy by introducing members to each other and procuring cars and other needed items. The judge also took Love's age and lack of extensive criminal history into account, noting that "he's kind of had episodic issues with crime. . . . at [some] points he appears to have gone a period of time with really very, very little of any criminal contact . . . ." and concluding that "having said this is a long-time criminal is not true. Not true." Having done so, the district court "was free to reach its own conclusion about defendant's danger to the community based on the circumstances of the offense and the district court's years of experience monitoring individuals on parole and supervised release," and was similarly free to determine the relative importance of that factor when weighed in the balance against the other relevant sentencing considerations. *See United States v. Janosko*, 355 F. App'x 892, 897 (6th Cir. 2009).

As to Love's sentencing-disparity argument, we have explicitly held that the need to avoid unwarranted sentencing disparities, as set forth in 18 U.S.C. § 3553(a)(6), "concerns *national* disparities between defendants with similar criminal histories convicted of similar criminal conduct—not disparities between co[-conspirators]." *United States v. Conatser*, 514 F.3d 508, 521 (6th Cir. 2008). Moreover, the sentencing judge in this case found not only that Love had played an important role in facilitating the conspiracy, but also that a two-level enhancement for obstruction of justice seriously underrepresented the nature of the obstruction. Thus Love was in a materially different circumstance than his co-conspirators at sentencing, a reality that the trial court took into consideration when it considered the proportionality of Love's sentence. Comparisons between Love and his co-conspirators were simply not apposite.

B

Love next makes the argument that the district court violated his Sixth Amendment right to trial by jury in sentencing him as if the jury had found him responsible for at least 50 kilograms of cocaine, when in fact the jury returned a general verdict of guilty on the conspiracy charge without having found any particular quantity of drugs attributable to Love specifically. Love makes this argument in two versions, first claiming that the court's decision to hold him responsible for at least 50 kilograms of cocaine was a "structural error" in the same sense as treating the Sentencing Guidelines as mandatory or violating a defendant's right to choice of counsel are structural errors, and thus requires remand even in the absence of a showing of prejudice. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 141 (2006) (holding that violations of the right to counsel of choice are not subject to harmless-error analysis); *United States v. Barnett*, 398 F.3d 516, 527–28 (6th Cir. 2005) (presuming prejudice when Sentencing Guidelines treated as mandatory). He secondly claims that, in the alternative, the judge's sentence was "simple error." In both varieties, Love grounds his argument on the fact that the Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *United States v. Booker*, 543 U.S. 220 (2005) generally require that any fact "necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 543 U.S. at 244. Because the jury in his case did not specify the amount of cocaine for which he was responsible, Love argues, it was error under *Apprendi* and *Booker* to sentence him as if he were responsible for anything other than the smallest amount of cocaine punishable under the statute: less than 25 grams, which would correspond with a base offense level of 12 and (assuming

his criminal history category and upward adjustment for obstruction of justice remained the same)

result in a Guidelines range of 18 to 24 months.

These arguments are identical in substance to those presented and rejected in Love's earlier

appeal. In our opinion of August 12, 2008, the panel summarized the issue then before it as follows:

> Love contends that the Sixth Amendment, as interpreted in *Apprendi v. New Jersey*,
> forbids sentencing courts from finding facts that increase a defendant's sentence for
> a drug offense unless a jury has designated a drug quantity by special verdict. Love
> infers from *Apprendi* that the jury's determination of guilt for an unspecified quantity
> of cocaine permits sentencing for only the minimum amount punishable under the
> Guidelines—less than twenty-five grams.

*Love*, 289 F. App'x at 891 (citation omitted). Our earlier decision unambiguously rejected this line

of argument, holding that it was refuted by the Supreme Court's decision in *Harris v. United States*,

536 U.S. 545 (2002). The Court in *Harris*, we noted, "held that juries need only determine the 'outer

limits' of a sentence, leaving the court free to make factual determinations that increase the sentence

within the jury-authorized range." *Love*, 289 F. App'x at 891 (quoting *Harris*, 536 U.S. at 567).

Because the 240-month sentence being reviewed at that time did not exceed the maximum statutory

penalty applicable for an indefinite amount of cocaine, we held, it did not run afoul of *Apprendi*. *Id.*

at 891–92; *see also* 21 U.S.C. § 841(b)(1)(C) ("In the case of a controlled substance in schedule I

or II . . . such person shall be sentenced to a term of imprisonment of not more than 20 years.").[3]

_____

[3]On re-sentencing, the district court found Love's maximum sentence under 21 U.S.C. §
841(b)(1)(C) to be thirty years, the statutory maximum for those persons who "commit[] such a
violation after a prior conviction for a felony drug offense has become final." Love argued below
that he had not actually been convicted in the prior case in question, which involved a 1993 plea of
guilty and subsequent deferred adjudication in the state of Texas. The district court found this to
have been a prior conviction, a decision that is not before us now but one that does not offend
*Apprendi*, which explicitly exempts prior convictions from the requirement that facts used to

It follows that Love's current attempt to make this argument is barred by the law of the case doctrine. "As most commonly defined, the doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988) (alteration marks and citation omitted).

It is true that "a subsequent contrary view of the law by the controlling authority" in a pending case is one of the limited circumstances in which disregarding the law of the case may be justified. *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994) (citation omitted). While Love's appellate brief does gamely argue that *Harris* was "decisively overrule[d]" by the Supreme Court's decision in *Cunningham v. California*, 549 U.S. 270 (2007), we note that *Cunningham* was decided on January 22, 2007—more than five months before Love filed his opening brief in his original appeal and more than eighteen months before our decision in that case was filed. Thus *Cunningham* was not a *subsequent* view of the law at all.

Nor, moreover, was *Cunningham*'s view of the law contrary to that we expressed in Love's original appeal. The portion of *Cunningham* cited by Love indicates that the Supreme Court "has repeatedly held that, under the Sixth Amendment, any fact that exposes a defendant to a greater *potential* sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." *Cunningham*, 549 U.S. at 281 (emphasis added).

---

increase a sentence beyond a prescribed statutory maximum be found by a jury beyond a reasonable doubt. *United States v. Craft*, 495 F.3d 259, 266 (6th Cir. 2007); *see Apprendi*, 530 U.S. at 490. Whether the "outer limit" of Love's sentence was twenty years or thirty years was not dependent on the judge's determination as to the quantity of cocaine for which Love was responsible.

Thus the *Apprendi* line of cases, including *Booker* and *Cunningham*, continue to apply only in the circumstances delineated by this court in Love's earlier appeal—that is, when a finding is made that increases the defendant's maximum *potential* sentence. Because he was sentenced under the portion of the code governing conspiracy to distribute an unspecified amount of cocaine, Love's maximum potential sentence (including the enhancement for his prior felony conviction) was 360 months rather than the potential life imprisonment to which he would have been exposed if the jury had specified that it found him responsible for five or more kilograms of cocaine.[4] *See* 21 U.S.C. § 841(b)(1)(A). Hence the judge's decision to calculate a Guidelines range based on his own finding that Love had been responsible for between 50 and 150 kilograms of cocaine did not change the maximum sentence authorized by the jury, and the 204-month sentence did not violate Love's Sixth Amendment rights.

C

Love's final argument is that the district court erred in determining an amount of cocaine over 16 kilograms attributable to him, because any such amount was not within the scope of his criminal agreement with his co-conspirators. Love further notes that our decision in *United States v. Campbell*, 279 F.3d 392 (6th Cir. 2002), requires a sentencing court to find that conduct being imputed to a conspiracy defendant have been within the scope of the defendant's agreement and

---

[4]At re-sentencing, the government actually argued that Love's responsibility for more than 5 kilograms of cocaine and his prior felony conviction *did* subject him to a mandatory minimum of 20 years of imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A). The judge rejected this argument, explicitly finding that there was no mandatory minimum of 20 years. Thus it is clear that Love was sentenced under 21 U.S.C. § 841(b)(1)(C), which imposes no minimum sentence and carried the maximum terms of imprisonment noted above.

reasonably foreseeable to him. "[T]he district court's determination of the quantity of drugs attributable to a defendant for sentencing purposes" is reviewed for clear error. *United States v. Jackson*, 470 F.3d 299, 310 (6th Cir. 2006). "[A] district court's decision concerning a defendant's role in an offense" is also reviewed for clear error. *United States v. Gates*, 461 F.3d 703, 709 (6th Cir. 2006).

At the outset, it should be noted that it is somewhat unclear whether Love is arguing that (1) the district court committed a procedural error in failing to make a determination as to whether his co-conspirators' actions were within the scope of the conspiracy agreement, or that (2) the district court simply did not have enough support for concluding that those actions were within that scope. His brief on appeal claims that the court violated his procedural due process rights "by not abiding by the facts presented at trial in determining drug quantities," but also that the court "failed to find the other co-defendant's (sic) conduct was within the scope of Love's criminal agreement."

In either case, he is incorrect. Procedurally, the district court referred specifically to Love's role as a facilitator in order to indicate the extent to which Love was involved in the conspiracy. Later, counsel for Love and the district judge had the following exchange:

> MR. AVELLANO: . . . I think that the scope of the agreement relates to the amount of drugs that were being given to Mr. Love because he was at basically the end of the line. He was not much higher than just a user, which he was, and he was—
>
> THE COURT: Excuse me. You're not—I guess I didn't make myself clear. He was an introducer. He was a connector. I found that. That's what I found. I was here. I think I was downstairs, but I was in this courthouse. I made these findings.

Thus the court made a particularized finding that the scope of Love's agreement included his function as an "introducer" and "connector" who facilitated the distribution of cocaine by his co-conspirators.

Nor were these findings without substantive support. A district court may infer the scope of a defendant's agreement "from the conduct of the defendant and others." *Campbell*, 279 F.3d at 400 (citation and internal quotation marks omitted). In addition to his own purchases of multiple kilograms of cocaine at a time, Love helped recruit co-conspirator Troy Lei into the conspiracy by "[t]elling [him] how much money [he] could make going to Florida to transport cocaine from there to various places in Michigan." Later, Love was used as a conduit to pay Lei for driving cocaine supplier Juan Carlos Sanchez around Battle Creek while Sanchez looked to purchase a house in which to "stockpil[e] heavy loads of cocaine." Love was also aware of and facilitated the involvement of Roger Nesbitt, Lei's stepfather, who stipulated that he himself had been responsible for at least 150 kilograms of cocaine. Thus the court found that "while [Love] didn't have the involvement he might have had otherwise, he certainly had the ability to introduce, connect up, and make sure that cars and people were where they wanted to be, not in a managerial capacity, but as a connector capacity."

In this case, therefore, it was not clear error for the district court to conclude that the acts of Love's co-conspirators were within the scope of the conspiracy agreement as understood by Love, at least to the extent necessary to hold him responsible for a minimum of 50 kilograms of cocaine. Love did not merely purchase cocaine from other members of the conspiracy for distribution, but he also recruited others and provided logistical support; his criminal responsibility therefore extended well beyond the quantities of cocaine that he himself handled. Love makes no particularly well

developed argument to the contrary other than to insist that the district court's finding that he was a "connector" or "introducer" of others into the conspiracy "does not mean that this was Love's job in the conspiracy." The questions of whether his co-conspirators' actions were within the scope of the conspiracy and foreseeable to Love turn on the nature of his actual knowledge and participation, however, and not on some hypothetical job description.

### III

Mr. Love appears to have genuinely turned over a new leaf during his time on the run. Unfortunately, his efforts at reform—no matter how sincere or how successful—do not entitle him to escape a sentence properly imposed upon him for his earlier misdeeds. The judgment of the district court is **AFFIRMED**.