**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 15a0506n.06

**No. 14-4286**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Jul 16, 2015

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| **Plaintiff-Appellee,** | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| **v.** | ) | |
| | ) | |
| **JOHN MARTINEZ,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | **OPINION** |

**BEFORE:** CLAY and McKEAGUE, Circuit Judges; BERTELSMAN, District Judge.[*]

**PER CURIAM.** Defendant-Appellant John Martinez appeals the sentence of seventy months' imprisonment imposed by the district court following his plea of guilty to a six-count indictment charging him with various federal drug crimes. We **AFFIRM**.

I.

**A.     Previous Criminal Conviction**

In 2001, a federal grand jury indicted Martinez on five federal drug crimes. Martinez pleaded guilty to conspiracy to possess with intent to distribute cocaine; he received a sentence

_____

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

of forty-six months' incarceration to be followed by three years of supervised release. On February 22, 2007, the sentencing court terminated Martinez's supervised release early.

### B.    Investigation and Indictment

Martinez became the focus of a joint, federal-state drug task force in October of 2012. Law enforcement officers subsequently made six controlled buys of heroin at Martinez's home between October 29, 2012, and November 19, 2012. Authorities eventually obtained a warrant to search Martinez's residence in Youngstown, Ohio and executed that warrant on April 23, 2013. Law enforcement officers found cocaine, heroin, marijuana, a digital scale, cutting agents, cell phones, baggies, and $22,562 while executing the warrant.

On February 26, 2014, a federal grand jury in the Northern District of Ohio returned a six-count indictment against Martinez. Counts I through V of the Indictment charged Martinez with distributing heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Count VI of the Indictment charged Martinez with possession of cocaine with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(i), and (b)(1)(C).

### C.    Plea Agreement and Guilty Plea

In April of 2014, Martinez negotiated a plea agreement with the Government pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and (B). Martinez and the Government agreed, among other things, that his guidelines offense level would be twenty-one (21), which included a three-level reduction for acceptance of responsibility and a two-level reduction later adopted by the United States Sentencing Commission.

On May 2, 2014, Martinez appeared before a United States Magistrate Judge and pled guilty to all six counts of the Indictment pursuant to the plea agreement. The Magistrate Judge prepared a report and recommendation for the District Judge, recommending "that the plea of guilty be accepted and a finding of guilty be entered by the Court."

On July 21, 2014, the District Judge approved the parties' plea agreement. And on July 23, 2014, the District Judge adopted the Magistrate Judge's report and recommendation, adjudging Martinez guilty of all six charges.

**D.     Sentencing**

United States Pretrial Services filed Martinez's Presentence Investigation Report ("PSR") on July 7, 2014. Neither Martinez nor the Government filed objections to the PSR, and it was amended to reflect that fact on August 7, 2014. Martinez filed a sentencing memorandum the same day.

On December 16, 2014, Martinez appeared before the District Judge for sentencing. The United States Sentencing Commission promulgated new Guidelines in November of 2014 that were more favorable to Martinez, so the court and the parties agreed that Martinez should be sentenced under the new Guidelines. The District Judge proceeded to identify the applicable offense level under the 2014 Guidelines, and the parties and the court agreed that the proper level was twenty-one (21), including a three-level reduction for acceptance of responsibility. The court and the parties then moved on to a discussion of Martinez's Criminal History Score for purposes of the Guidelines, and the District Judge began by making the following statement:

> THE COURT:  Mr. Martinez, I remark that I double-checked this, because I didn't think it possible that your criminal history score could only be 3. I thought it would be more correct at 5, because I believe that you should have still

been on supervised release from your other federal crime; but I've since learned that you were granted early release, early termination of supervision, and for that reason, your criminal history remains at 3 and was not increased by two levels. Had it been increased by two levels, that would have moved you from Category II to Category III.

You realize how close you've come, don't you?

Martinez responded that he understood.

After discussing offense level and criminal history score, the parties agreed that Martinez's advisory Guidelines range for Counts I-V of the Indictment was forty-one (41) to fifty-one (51) months' imprisonment. Because a five-year mandatory minimum applied to Count VI of the Indictment, the parties agreed that Martinez's Guidelines range for that offense was sixty months.

The District Judge then proceeded to the allocution portion of the sentencing hearing. The Government spoke first, lamenting that Martinez had returned to federal court after serving a prior sentence for a drug crime and that Martinez had not furthered his education or learned a skill since his previous incarceration. The Government did recognize that Martinez's criminal history was less extensive than other defendants and that he had kept a steady job for the prior six years. Based on the totality of the circumstances, the Government recommended that the court impose a sentence of sixty (60) months' imprisonment.

Defense counsel spoke next. Counsel began by noting Martinez's diagnosis of multiple sclerosis and his family history of alcohol- and drug-related problems. Martinez's attorney emphasized that he is a hard worker, despite having an unskilled job, and noted that Martinez planned to improve himself while in prison so that he could get a better job following his release.

Defense counsel concluded his allocution by recommending that the court impose a sentence of sixty (60) months' imprisonment.

Martinez gave the last allocution at the sentencing hearing. He explained that he had returned to selling drugs—despite previously serving a prison sentence for a federal drug conviction—because he co-signed his daughter's student loans and needed to repay $30,000. Martinez admitted that he chose making easy money distributing narcotics over working two jobs in order to repay the debt. The district court clearly expressed its dissatisfaction with Martinez's reason for returning to the drug trade:

> THE COURT: I cannot understand how it is you can care so much about your daughter that you want to promote her education, and then pay the debt and deal drugs. . . . [S]he's in the community where you're pushing the dope, heroin, the most addictive drug that law enforcement officers are fighting today. You were pushing heroin --
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: -- cocaine and marijuana, all because you had a debt to pay. Who doesn't have a debt to pay? That alone, I mean, truly, that's your reason, that's why you did this, just to pay a bill, you throw your integrity out the window?
>
> A colleague of mine obviously believed in you. He believed in you enough that he let you off supervision early. "Martinez isn't coming back, he's not going to do this again." And then you get a little bit in debt and you do it again?
>
> I really -- I've been thinking about this for a while, and hoped you'd tell me something more than the report.
>
> How is it I'm going to trust you in society when you buckle under so little provocation as a debt? What else will it take? A feather drops on your shoulder, you push heroin. It doesn't seem like it takes much to push you in the wrong direction.
>
> Do you see the point I'm making?
>
> THE DEFENDANT: Yes, Your Honor.

Martinez concluded his allocution by emphasizing to the district court that he wanted to better himself in prison: "I would like to better myself, look at my family in a different way, knowing that I can provide for them. And that was my strive [sic] in life, to better them so they wouldn't have to turn the way I did, not looking at the consequences."

Following the allocutions by counsel and Martinez, the District Judge proceeded to consider the § 3553(a) factors. As to the nature and circumstances of the offense, the District Judge noted that the charged crimes "are horrendous in that these drugs destroy lives. People die from heroin overdoses." The district court also noted that, specific to Martinez, the offenses caused "family members to lose respect for [him] and judicial officers lose the ability to impose trust in what [he says] that [he] will do."

As to the history and characteristics of the defendant, the District Judge commented that Martinez's age, 45, "speaks of a maturity" and that Martinez had "fairly strong family ties." The district court recognized that Martinez had "managed a long-term history of employment," but also noted that he was "pretty clearly . . . addicted to alcohol and perhaps other behaviors that involve smoking marijuana." The District Judge then moved on to Martinez's medical history, calling his multiple sclerosis "unfortunate" but stating her confidence that "the Bureau of Prisons is certainly well equipped to handle both depression and multiple sclerosis." The district court accordingly concluded that "the sentence [it will] impose will [not] cause [Martinez] to suffer from [his] illness."

The District Judge finally discussed punishment, deterrence, and the seriousness of the offense. As to punishment, the district court stated: "I also will remark that I intend to punish you. You expect that. You've been told that before. You've earned it. As we've talked about,

you've recidivated. You've completed already a fairly lengthy federal sentence, and you're back

again for an even longer sentence." As to deterrence, the district court stated:

> I hope that what I do with you here now, even if it does not deter you, but it does deter others who might look to you as an example, might protect the public. And by doing that, I don't know the level of your distribution, but at least for the length of time that you're incarcerated, there is one less drug dealer on the streets.

As to the seriousness of the offense, the district court stated:

> And I do intend to reflect the seriousness of the offense, and to allow you to improve your conduct and condition if you're so inclined to do that. And by doing that, I mean by taking up all opportunities in prison to work against any addictions from which you suffer, and also to further your education, and to learn a trade, whatever that might be that may allow you to become perhaps more handsomely employed when you're released from prison.

And that concluded the District Judge's discussion of the § 3553(a) factors.

The district court then varied upward from the Guidelines range on Counts I through V

and the mandatory-minimum sentence on Count VI, imposing concurrent sentences of sixty (60)

months on Counts I through V and seventy (70) months on Count VI:

> For all of those reasons, and understanding what the advisory guidelines suggest, and also what the statutory minimum is that I shall at least impose, I think this is a circumstance whereby as to Counts 1 through 5, I will vary up to the 60-month term of incarceration suggested by Count 6. For Count 6, I will vary upwards to 70 months. And I do that, sir, because I think you don't present to me the picture of a person who has fully come to grips with what you've done and how little provocation it took for you to once again commit these serious crimes. Paying a debt can't be a good enough reason to violate our federal laws and to spew trash in our streets. To spread heroin, cocaine and marijuana in the same community where it is you claim to be wanting to make a better life for your child makes absolutely no sense to me.

Following sentencing, on December 18, 2014, the district court issued a Memorandum Opinion

further explaining why it believes the § 3553(a) factors "strongly encourage an above-guidelines

sentence" in Martinez's case.

II.

## A.    Standard of Review

The parties dispute the applicable standard of review.    Martinez argues for traditional abuse-of-discretion review under *Gall v. United States*, 552 U.S. 38 (2007), as to both procedural and substantive reasonableness.    The Government contends that plain-error review applies to Martinez's argument that his sentence is procedurally unreasonable.    This Court's decision in *United States v. Vonner*, 516 F.3d 382 (6th Cir. 2008) (en banc), requires us to resolve the dispute over the standard of review.

*Vonner* holds that if a district court asks the so-called *Bostic* question[1] after announcing its proposed sentence and "if the relevant party does not object, then plain-error review applies on appeal to those arguments not preserved in the district court." *Id.* at 385.    After announcing her proposed sentence, the District Judge gave each party an opportunity to object, using declarative language paralleling the *Bostic* question.    Defense counsel objected thusly:

> I object to the additional ten months, for the reasons set forth not only in the brief, but also the PSR.    And, Your Honor, here is a man who -- and I understand this is the -- you know, this is the second time he's been before a federal judge.    However, he does have some serious medical problems, and those medical problems are not getting better.    He does have a drinking problem.    You know, we put that in our brief, Your Honor, and he does need some help with that, which I will address after.
>
> And for those reasons, Your Honor, we object.

Martinez's counsel said nothing more on the matter.

---

[1] *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), "suggested that district courts, after announcing a proposed sentence, 'ask the parties whether they have any objections to the sentence . . . that have not previously been raised.'" *Vonner*, 516 F.3d at 385 (quoting *Bostic*, 371 F.3d at 872).

We hold that defense counsel's objection is not particular enough to preserve for appellate review Martinez's argument that the district court did not adequately consider the § 3553(a) factors. Defense counsel did not mention the § 3553(a) factors or object to the District Judge's discussion of them. *Compare United States v. Simmons*, 587 F.3d 348, 358 (6th Cir. 2009) ("We hold that *Vonner* requires the application of plain-error review to procedural claims like this one, where a party answers the *Bostic* question in the affirmative, but at such a high degree of generality that the district court has no opportunity to correct its purported error and the court of appeals has been deprived of a more detailed record to review."), *with United States v. Johnson*, 627 F.3d 578, 585 (6th Cir. 2010) ("Because Johnson objected broadly to all aspects of his sentence without making any particular objections, his claims on appeal regarding procedural sentencing errors are reviewed for plain error."). Furthermore, counsel's objection based on the PSR and Martinez's sentencing memorandum could not have encompassed the district court's consideration of the § 3553(a) factors because the district court had yet to consider those factors when the PSR and sentencing memorandum were filed.

Plain-error review "requires [Martinez] to show (1) error (2) that 'was obvious or clear,' (3) that 'affected defendant's substantial rights' and (4) that 'affected the fairness, integrity, or public reputation of the judicial proceedings.'" *Vonner*, 516 F.3d at 386 (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)). This Court will find plan error only in "exceptional circumstances." *Id.*

**B.** **Procedural Reasonableness**

Martinez argues that his sentence is procedurally unreasonable only because the district court did not adequately address the § 3553(a) factors.[2] Citing *United States v. Smith*, 505 F.3d 463, 467 (6th Cir. 2007), he contends that the "deliberation" required by this Court's precedents "should mean more than just listing the factors on the page" and that "[i]n the sentencing memorandum, the district court just lists the factors as justification for her ten month upward variance. There are no real insights or explanations of how the factors determine the decision to impose the variance." Brief of Appellant at 14.

A district court's sentence is procedurally unreasonable if the court, among other things, "fail[s] to consider the § 3553(a) factors." *Gall v. United States*, 552 U.S. 38, 51 (2007). "The statutory command is an insistence upon deliberation, not a formulaic requirement. When reviewing the district court's consideration of the § 3553(a) factors, we have never required the ritual incantation of the factors to affirm a sentence." *Smith*, 505 F.3d at 467 (quoting *United States v. Cage*, 458 F.3d 537, 543 (6th Cir. 2006)) (internal quotation marks omitted).

As this Court stated in *United States v. Brooks*, 628 F.3d 791 (6th Cir. 2011), "the Supreme Court has made clear that '[t]he appropriateness of brevity or length, conciseness or

---

[2] The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentenced imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes committed by the defendant, and provide the defendant with needed educational and vocational training or medical care; (3) the kinds of sentences available; (4) the sentencing range established by the Guidelines; (5) any pertinent policy statement by the U.S. Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants; and (7) the need to provide restitution to any victims.

detail [of a judge's explanation for a particular sentence], . . . depends upon circumstances' that are left 'to the judge's own professional judgment.'" *Id.* at 796 (first alteration in original) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)). And where a district court adequately explains why it chose a particular sentence, "we do not further require that it exhaustively explain the obverse—*why* an alternative sentence was *not* selected in every instance." *United States v. Chiolo*, 643 F.3d 177, 185 (6th Cir. 2011) (quoting *United States v. Gale*, 468 F.3d 929, 940 (6th Cir. 2006)) (internal quotation marks omitted).

Martinez's argument does not take into account the district court's discussion of the § 3553(a) factors on the record at the sentencing hearing. The record demonstrates that the district court did more than simply list the factors on the page in its Memorandum Opinion on Sentencing. The District Judge addressed many of the § 3553(a) factors at the sentencing hearing and explained how her perception of those factors informed the chosen sentence. The district court specifically addressed the circumstances of the offense, the defendant's history and characteristics, the seriousness of the offense, promoting respect for the law, providing just punishment, affording deterrence, protecting the public, Martinez's medical needs, and the Guidelines range. The District Judge's explanation was more than adequate "to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50 (citing *Rita*, 551 U.S. at 351). Martinez's appeal therefore does not present the exceptional circumstances required for this Court to hold that his sentence is procedurally unreasonable under the plain-error standard. *Vonner*, 516 F.3d at 386.

Applying plain-error review, we cannot say that the district court committed error, and at minimum any such error was not obvious or clear. We accordingly hold that Martinez's sentence is procedurally reasonable.

## C.    Substantive Reasonableness

Martinez argues that his sentence is substantively unreasonable because the district court "placed inordinate weight on Martinez's criminal history." Brief of Appellant at 14 (citing *United States v. Caver*, 470 F.3d 220, 248 (6th Cir. 2006)). He contends that the District Judge "was pre-occupied with his past drug dealing offense," as well as "indignant over the fact that Martinez qualified as a Criminal History Category II rather than a III due to his early release and early termination of supervision." *Id.* Martinez finally argues that, "in the district court's sentencing memorandum, the past conviction appeared to be the definitive [§] 3553(a) factor for an above-guidelines sentence." *Id.* at 15.

A district court's sentence is substantively unreasonable if the court, among other things, gives unreasonable weight to any of the pertinent § 3553(a) factors. *Caver*, 470 F.3d at 248. But "[a] district court may place great weight on one factor if such weight is warranted under the facts of the case." *United States v. Adkins*, 729 F.3d 559, 571 (6th Cir. 2013) (citing *United States v. Zobel*, 696 F.3d 558, 571–72 (6th Cir. 2012)). Furthermore, "this Court has recognized that the manner in which a district court chooses to balance the applicable sentencing factors is beyond the scope of the Court's review" for substantive reasonableness. *Id.* (citing *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008); *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006)). Accordingly, "[w]here a district court explicitly or implicitly considers and weighs all pertinent factors, a defendant clearly bears a much greater burden in arguing that the

court has given an unreasonable amount of weight to any particular one." *Id.* (quoting *United States v. Thomas*, 437 F. App'x 456, 458 (6th Cir. 2011)) (internal quotation marks omitted).

The record does not bear out Martinez's argument that the district court placed impermissible weight on his prior criminal history at sentencing. The sentencing transcript demonstrates that the District Judge was most frustrated with the reason that Martinez gave for returning to selling narcotics after his prior conviction: needing to repay $30,000 worth of loans that he cosigned so that his daughter could attend college. When the district court announced its upward variance, the variance had little to do with Martinez's prior criminal history:

> I think you don't present to me the picture of a person who has fully come to grips with what you've done and how little provocation it took for you to once again commit these serious crimes. Paying a debt can't be a good enough reason to violate our federal laws and to spew trash in our streets. To spread heroin, cocaine and marijuana in the same community where it is you claim to be wanting to make a better life for your child makes absolutely no sense to me.

The District Judge placed more weight on the nature and circumstances of the offense for which Martinez was sentenced than on his prior criminal history. To be sure, Martinez's recidivism played a role in the district court's decision to vary upward from the mandatory-minimum sentence, but the court did not put an impermissible amount of weight on Martinez's criminal history. Martinez therefore cannot meet his "much greater burden" to show that the district court's sentence was substantively unreasonable. *Adkins*, 729 F.3d at 571.

Applying abuse-of-discretion review, the District Judge did not place an impermissible amount of weight on Martinez's criminal history. We accordingly hold that Martinez's sentence is substantively reasonable.

III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.