NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0147n.06

Case No. 21-5560

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Apr 06, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| MICHAEL LAPAGLIA, | ) ) | |
| Defendant-Appellant. | ) ) | |

Before: GUY, THAPAR, and READLER, Circuit Judges.

THAPAR, Circuit Judge. A district court sentenced Dr. Michael LaPaglia to eighteen months in prison. LaPaglia argues this sentence is substantively unreasonable. It isn't. So we affirm.

I.

When Dr. Michael LaPaglia was convicted of state drug charges, his medical license was placed on probation. But that didn't stop him from prescribing medication, albeit illegally. He teamed up with another doctor to establish a concierge-style clinic. Patients would pay $300 a month to get prescriptions for controlled substances. They would then fill the prescriptions using private and public healthcare programs. Rather than meet LaPaglia at a doctor's office, the patients would come to his home or even meet him in McDonald's parking lots. Because LaPaglia's medical license was on probation, though, he couldn't sign the prescriptions himself. So the other

doctor gave him blank, pre-signed prescriptions.  And when he ran out of pre-signed prescriptions, LaPaglia forged the doctor's signature.

LaPaglia pled guilty to conspiring to distribute controlled substances and making material, false statements in connection with the delivery of healthcare benefits.  *See* 18 U.S.C. § 1035(a)(2); 21 U.S.C. §§ 846, 841(b)(1)(E).  He was released on bond pending sentencing and, among other conditions, was ordered to refrain from using controlled substances and to report truthfully to his pretrial officer.

But LaPaglia violated those conditions.  When his pretrial officer asked him to report for a drug test, LaPaglia claimed he was in quarantine after testing positive for COVID-19.  The officer requested proof.  So LaPaglia produced a positive COVID-19 test.  But LaPaglia didn't have COVID-19.  He forged the positive COVID-19 test to avoid failing his drug test.  And rather than quarantining, LaPaglia was traveling to homes and businesses administering COVID-19 tests.  What's more, a patient had complained to federal agents that LaPaglia was improperly administering the tests.  According to the patient, LaPaglia didn't wear a mask or gloves, didn't have a working thermometer, and gave the patient pills that he dumped from larger bottles into smaller, unmarked ones.

At his sentencing hearing, the parties agreed that LaPaglia's guidelines range was six to twelve months' imprisonment.  But the district court varied upward and imposed an eighteen-month sentence.  The district court also imposed three years of supervised release and ordered LaPaglia to pay $5,022.72 in restitution.

## II.

LaPaglia's only challenge on appeal is that his eighteen-month sentence is substantively unreasonable.  To prevail, he must show the district court abused its discretion.  *See United States*

*v. Nixon*, 664 F.3d 624, 625–26 (6th Cir. 2011). He argues that it did so in two ways: first, by imposing a six-month upward variance; and second, by imposing prison time when he was eligible for probation. We disagree on both fronts.

*Upward variance.* The district court sentenced LaPaglia to eighteen months in prison. Although this sentence was above his guidelines range, even an above-guidelines sentence is entitled to "due deference." *Gall v. United States*, 552 U.S. 38, 51 (2007). After all, the district court is best positioned to weigh the section 3553(a) factors. True, larger variances require more significant justifications than smaller ones. But there is no "rigid mathematical formula." *Id.* at 47, 50. As long as the district court reasonably concluded that the section 3553(a) factors "justify the extent of the variance," we affirm. *Id.* at 51.

Here, the district court did just that. It considered the section 3553(a) factors and reasonably concluded that they justified a six-month upward variance. Starting with LaPaglia's personal history and characteristics, the district court noted his struggle with substance abuse and his record of legal challenges. *See* 18 U.S.C. § 3553(a)(1). It mentioned two civil suits in which former patients accused LaPaglia of inappropriately performing his medical duties and the transgressions that led him to lose his ability to prescribe.

Next, the district court considered the nature and circumstances of the offense. *See id.* The court emphasized the severity of the crime: providing "concierge medicine" without a valid license to prescribe. It commented on how LaPaglia used the pre-signed prescriptions of another doctor— a doctor who was not "present when the prescriptions were written" and "who had not seen the patient." R. 86, Pg. ID 578–79. And it pointed out that when LaPaglia "ran out of those pre-signed prescriptions," he resorted to forging the doctor's signature. *Id.* at 579.

The district court also considered the operation's unprofessional nature. LaPaglia met clients "in his home, on street corners, and even in a McDonald's parking lot" and communicated with them "via text message, cellphone calls, and WhatsApp." *Id.* at 578. On top of that, the court highlighted LaPaglia's victims—the patients "who did not receive proper treatment," but also federal and state taxpayers since the prescriptions were sometimes paid for by public healthcare programs. *Id.* at 579.

The district court then marched through several other section 3553(a) factors. It discussed at length the need to protect the public, describing how LaPaglia "took advantage" of patients suffering from addiction and others who trusted him to provide "adequate medical care." *Id.* at 580; *see* 18 U.S.C. § 3553(a)(2)(C). And it emphasized how LaPaglia "believes himself to be above the law." R. 86, Pg. ID 580. The court pointed not only to LaPaglia's continued use and distribution of drugs, but also to the "schemes" he concocted while on pretrial release. *Id.*; *see* 18 U.S.C. § 3553(a)(2)(A)–(B). Specifically, LaPaglia's efforts to avoid a positive drug test: lying about having COVID-19 and forging a positive test.

The district court balanced these considerations and determined that an eighteen-month sentence would best serve the sentencing goals outlined in section 3553(a).

LaPaglia disagrees. He argues that most of the conduct the district court described was already factored into the guidelines calculation. But that's beside the point. A district court may reasonably assign added significance to certain section 3553(a) factors even if they are accounted for in the sentencing guidelines. *See Nixon*, 664 F.3d at 626; *United States v. Tristan-Madrigal*, 601 F.3d 629, 635–36 & n.1 (6th Cir. 2010). And that's what it did here. It said that LaPaglia's "position of trust" as a doctor creates an "enhanced risk to the public" because "[u]nsuspecting members of the community respect this pedigree." R. 86, Pg. ID 580. The court also noted the

"heightened need for adequate deterrence" given LaPaglia's repeated disrespect for the law, including his misbehavior on pretrial release and the fact that he "successfully evaded substantial oversight" for a long time. *Id.* at 583. All in all, the district court reasonably concluded that these factors deserved greater significance and that an upward variance would account for them.

LaPaglia also contends that the district court didn't adequately consider his personal characteristics. He points out that he cooperated in his prosecution and in the prosecution of others. And he suggests that this reflects favorably on his character. But the district court did acknowledge LaPaglia's cooperation. So LaPaglia really just disagrees with how the district court balanced the section 3553(a) factors and asks us to rebalance them. But that is "simply beyond the scope of our appellate review." *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006). Nothing in the record suggests the district court abused its discretion in how it weighed the section 3553(a) factors or in granting an upward variance.

*Prison time.* LaPaglia next argues that the district court abused its discretion by imposing prison time when he was eligible for probation. According to LaPaglia, confinement is unnecessary to achieve the sentencing goals outlined in section 3553(a). He suggests the consequences he has already suffered—losing his medical license and becoming a felon— sufficiently deter him from further misconduct and protect the public. He also believes these consequences deter similarly situated criminals and constitute just punishment.

But it's not our job to sentence LaPaglia in the first instance. *See id.* And here, the district court considered—and rejected—probation. Indeed, the district court explained that probation would not satisfy the section 3553(a) factors, "especially given Dr. LaPaglia's unwillingness to follow court-ordered terms of release." R. 86, Pg. ID 582. In the district court's view, LaPaglia's schemes show "his creative nature to avoid responsibility and break the rules at the expense of

public safety." *Id.* The court concluded that probation was thus insufficient. And LaPaglia has given us no reason to second-guess that determination.

* * *

We affirm.