NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0268n.06

Nos. 24-5174/5176/5248/5361

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

May 30, 2025

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| v. | ) ) ) | |
| TARA LEA IBARRA (24-5174); RICKY JOE BLAND (24-5176); LARRY MATTHEW TIMBS (24-5248); JEREMY ELLIS (24-5361), | ) ) ) ) | OPINION |
| Defendants-Appellants. | ) ) ) | |

Before: MOORE, GRIFFIN, and KETHLEDGE, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Ricky Joe Bland, Jeremy Ellis, Tara Lea Ibarra, and Larry Matthew Timbs were all members of a conspiracy to distribute methamphetamine throughout Eastern Tennessee. All four pleaded guilty to conspiracy charges, with Bland pleading guilty to an additional charge of possessing a firearm in furtherance of a drug-trafficking crime. And all four received sentences either within or at the bottom of their recommended Sentencing Guidelines range. Bland, Ellis, Ibarra, and Timbs now raise various challenges to their sentences on appeal. But because we do not find reversible error with any of the district court's sentencing decisions, we **AFFIRM**.

## I. FACTUAL BACKGROUND

### A. The Conspiracy

Beginning in 2022, the Tennessee Bureau of Investigation ("TBI") started investigating a large-scale conspiracy to distribute methamphetamine stemming from suppliers incarcerated in a Northern Georgia prison. R. 280 (Ibarra PSR at ¶ 29) (Page ID #1404). TBI identified several key distributors in Tennessee including Ricky Joe Bland and Jeremy Ellis. *Id.* at ¶ 31. Law enforcement also identified mid-level distributors, including Tara Lea Ibarra, and low-level distributors and methamphetamine users, including Larry Matthew Timbs. *Id.* at ¶¶ 32–33.

On May 17, 2022, officers of the Tullahoma Police Department arrested Bland, who had an active warrant for his arrest; a search of his person yielded a loaded handgun and about 24 grams of methamphetamine (actual). R. 281 (Bland PSR at ¶ 37) (Page ID #1437). During an interview with police that day, Bland admitted to purchasing the firearm, making several trips to Georgia to purchase methamphetamine, and selling methamphetamine to customers in Tennessee. *Id.* at ¶ 38 (Page ID #1437–38).

A week later, on May 23, 2022, Timbs, who was in custody following his arrest several weeks earlier on an unrelated drug charge, agreed to an interview with law enforcement in which he admitted to purchasing methamphetamine from Bland in small quantities every other week for several months. R. 391 (Timbs PSR at ¶ 35) (Page ID #2220). Timbs stated that he would typically keep a third of what he purchased for personal use and resell the rest. *Id.*

Then, on July 19, 2022, Ibarra consented to an interview with law enforcement during which she admitted to purchasing methamphetamine from another member of the conspiracy twice a week for about a month. R. 280 (Ibarra PSR at ¶ 48) (Page ID #1409). Ibarra stated that she

would keep half of what she purchased and redistribute the other half by selling small amounts to others through Facebook. *Id.*

Finally, on October 12, 2022, police interviewed Ellis, who admitted to meeting with other members of the conspiracy and selling them varying quantities of methamphetamine. R. 443 (Ellis PSR at ¶ 70) (Page ID #2667). Ellis maintained that he was merely a middleman who was paid to facilitate transactions between purchasers and other sources. *Id.* But law enforcement had obtained text messages between Ellis and another member of the conspiracy from April of that year in which Ellis stated that he had "clear"[1] available for "dirt cheap prices." *Id.* at ¶ 57 (Page ID #2662–63).

## B. The Proceedings Below

A grand jury indicted Bland, Ellis, Ibarra, and Timbs alongside a number of additional members of the conspiracy in an eleven-count indictment on drug and weapons charges. R. 1 (Indictment at 1–5) (Page ID #1–5). After initially entering pleas of not guilty, all four subsequently entered guilty pleas: Bland pleaded guilty to one count of conspiracy to distribute methamphetamine under 21 U.S.C. § 841(b)(1)(C), and to one count of possessing a firearm in furtherance of a conspiracy under 18 U.S.C. § 924(c)(1)(A)(i); and Ellis, Ibarra, and Timbs each pleaded guilty to the lesser included offense of conspiracy to distribute methamphetamine under 21 U.S.C. § 841(b)(1)(C). R. 231 (Ibarra Plea) (Page ID #654); R. 232 (Bland Plea) (Page ID #655); R. 250 (Timbs Plea) (Page ID #819); R. 271 (Ellis Plea) (Page ID #1187).

---

[1]"Clear" is a slang term referring to methamphetamine. *See* Drug Enforcement Agency, *Slang Terms and Code Words: A Reference for Law Enforcement Personnel* 7, 37 (July 2018).

### C. Sentencing

Following their guilty pleas, each defendant's case proceeded to sentencing.

#### 1. Bland

Prior to sentencing, the United States Probation Office prepared a Presentence Investigation Report ("PSR") identifying Bland's total offense level as 33 and criminal history category as III, resulting in a total Guidelines range of 168 to 210 months. R. 281 (Bland PSR at ¶¶ 90, 112, 145). But the PSR also noted that the firearm charge to which Bland had pleaded guilty carried a five-year mandatory minimum and that any term of imprisonment on that charge was statutorily required to be imposed consecutively to any other counts. *Id.* at ¶¶ 143–44; *see* 18 U.S.C. § 924(c)(1)(A)(i), (D)(ii). The Probation Office thus determined Bland's total Guidelines range to be 228 to 270 months.

At sentencing, Bland argued for a downward variance on two grounds: first, Bland argued that since his Guidelines range for the same conduct would have been lower had he not been charged with the firearm offense, but instead been given an enhancement for possessing a firearm during the commission of a drug crime, he should receive a lower sentence on the conspiracy charge; and second, Bland argued that the drug-weight calculation driving his high Guidelines range stemmed from his confession, and that the district court should vary downward so as not to disincentivize voluntary confessions. R. 479 (Bland/Ibarra Sent'g Tr. at 16, 22–23) (Page ID #3211, 3217–18). After considering both arguments, the district court declined to vary downward on either basis, determining that to do so "would run afoul of the obvious purpose of Congress" and "of what the sentencing guidelines intend to do." *Id.* at 27–28 (Page ID #3222–23). The district court then considered the 18 U.S.C. § 3553(a) factors as applied to Bland and determined

that a sentence of 228 months—the lowest end of Bland's Guidelines range—was appropriate. *Id.* at 50–51 (Page ID #3245–46).

All parties agreed that Bland's firearm charge carried a mandatory minimum of 60 months and that any sentence imposed pursuant to that charge must run consecutively to any sentence imposed for the drug conspiracy charge. *Id.* at 7, 19–20, 26 (Page ID #3202, 3214–15, 3221). But during the oral pronouncement of Bland's sentence, the district court erroneously stated that Bland's sentence would be "[168] months on Count 1 and 60 months on Count 8 to run *concurrently.*" *Id.* at 51 (Page ID #3246) (emphasis added). In its written judgment issued several days later, the district court clarified Bland's sentence as 228 months, "consist[ing] of 168 months imprisonment on Count One and 60 months imprisonment on Count 8, to run consecutively." R. 370 (Bland Judgment at 2) (Page ID #2062).

In addition to sentencing Bland to a period of imprisonment, the district court also imposed several special conditions of supervised release, two of which are relevant to this appeal. First, the district court required that Bland "submit [his] property, house, residence, vehicle, papers, computers, to a search conducted by a United States Probation Officer or designee." R. 479 (Bland/Ibarra Sent'g Tr. at 54) (Page ID #3249). The district court then altered this language slightly in its written judgment, stating that Bland must submit his "property, house, residence, vehicle, papers, computers *or office*" to search. R. 370 (Bland Judgment at 5) (Page ID #2065) (emphasis added).

Second, the district court imposed a special condition requiring Bland "to participate in a program of testing and treatment for drug and alcohol abuse as directed by the Probation Officer." R. 479 (Bland/Ibarra Sent'g Tr. at 53) (Page ID #3248). Bland raised an objection to this condition

at sentencing, arguing that it constituted an improper delegation of authority to the Probation Office. *Id.* at 57 (Page ID #3252). The district court overruled the objection and imposed the special condition as previously announced. *Id.*; R. 370 (Bland Judgment at 5) (Page ID #2065). Bland timely appealed the district court's judgment. R. 376 (Bland Notice of Appeal) (Page ID #2085–86).

### 2. Ellis

The Probation Office authored a PSR in Ellis's case calculating the amount of methamphetamine for which Ellis was responsible as 328.4 grams, deeming this a "conservative estimate" based on the statements that Ellis had made to police during his October 12, 2022 interview. R. 443 (Ellis PSR at ¶¶ 73–74) (Page ID #2668). The Probation Office used that drug weight to calculate Ellis's base offense level as 26, which was reduced to 23 by a three-level reduction for Ellis's acceptance of responsibility. *Id.* at ¶¶ 79, 88 (Page ID #2669). Combined with a criminal history category of VI, the Probation Office calculated Ellis's Guidelines range as 92 to 115 months. *Id.* at ¶¶ 105, 137 (Page ID #2679, 2687).

Ellis objected to the PSR, arguing that he should have received a two-level reduction in his total offense level under U.S.S.G. § 3B1.2(b) because he was merely a "minor participant" in the conspiracy. R. 415 (Ellis PSR Objections at 1) (Page ID #2488).[2] According to Ellis, he had acted "solely as a 'middleman' and did not possess any of the methamphetamine for which he [was] being held responsible." *Id.* at 1–2 (Page ID #2488–89). At sentencing, the government opposed

---

[2]Ellis also objected to the Probation Office's original drug-weight calculation of 268.55 grams of methamphetamine, arguing that the higher amount was unsupported by Ellis's statements to police. R. 415 (Ellis PSR Objections at 1) (Page ID #2488). But Probation agreed with Ellis's objection and submitted a revised PSR with the drug-weight calculation that Ellis had suggested. R. 443 (Ellis PSR at ¶ 74) (Page ID #2668). The drug-weight calculation is therefore not an issue on appeal.

Ellis's objection, arguing that Ellis was more culpable than many other members of the conspiracy because he was "acting as a direct middleman for [the conspiracy's leader] himself." R. 491 (Ellis Sent'g Tr. at 9) (Page ID #3321). The district court overruled the objection, determining that, "[i]n looking at all the facts in this case," and in particular the fact that Ellis had "already received a lower offense level by virtue of the plea agreement," Ellis was not entitled to a mitigating-role reduction under U.S.S.G. § 3B1.2(b). *Id.* at 10–11 (Page ID #3322–23).

In addition to seeking a mitigating-role reduction, Ellis filed a motion seeking a downward variance on the basis of the § 3553(a) factors, arguing again that he had played only a limited role in the conspiracy. R. 427 (Ellis Variance Mem.) (Page ID #2530–33). After considering several of the § 3553(a) factors as applied to Ellis, the district court denied the motion to vary downward from Ellis's Guidelines range. R. 491 (Ellis Sent'g Tr. at 14–15) (Page ID #3326–27). The district court then sentenced Ellis to 92 months of imprisonment, a sentence at the lowest end of his Guidelines range. *Id.* at 18 (Page ID #3330).

The district court entered Ellis's sentencing judgment on April 8, 2024. R. 457 (Ellis Judgment) (Page ID #2969–75). Ellis timely appealed. R. 464 (Ellis Notice of Appeal) (Page ID #3091).

### 3. Ibarra

In advance of her sentencing, the Probation Office authored a PSR calculating Ibarra's total offense level as 31 and her criminal history category as IV, resulting in a Guidelines range of 151 to 188 months. R. 280 (Ibarra PSR at ¶¶ 63, 78, 104) (Page ID #1410, 1416, 1421). In response, Ibarra filed a sentencing memorandum moving for both a downward departure and a downward variance. R. 304 (Ibarra Sent'g Mem. at 1) (Page ID #1620). Ibarra sought a downward departure

7

on the basis of U.S.S.G. § 4A1.3(b)(1), which permits a downward departure "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." And she sought a downward variance on the basis of "mitigating characteristics not fully taken into account elsewhere in the Guidelines," including her mental-health and substance-abuse history and her successes while on bond[3], arguing that a below-Guidelines sentence would "lead to the most effective manner of treatment": "inpatient and outpatient substance abuse treatment followed by ongoing monitoring and community support." *Id.* at 6–12 (Page ID #1625–31) (citing 18 U.S.C. § 3553(a)(2)(D)). She also argued that a below-Guidelines sentence would be consistent with a number of § 3553(a) factors. *Id.* at 8–11 (Page ID #1627–30).

At sentencing, the district court granted Ibarra's motion for a downward departure, reducing her criminal history category to II and resultant Guidelines range to 121 to 151 months. R. 479 (Bland/Ibarra Sent'g Tr. at 15) (Page ID #3210). But the district court denied Ibarra's motion for a downward variance, stating that "the Supreme Court has indicated that . . . providing a Defendant with needed education or vocational training, medical or other correction[al] treatment, is not an appropriate consideration in deciding a prison sentence." *Id.* at 40 (Page ID #3235). The district court thus construed Ibarra's argument as "go[ing] mostly to the history and characteristics of your client" and stated that it would "focus on whether a lesser sentence would be sufficient to reflect the seriousness of the offense, to hold respect for the law, and to provide

---

[3]While on bond, Ibarra successfully completed a 28-day inpatient substance-abuse program and community-based outpatient program and passed all random drug screens administered by the Probation Office. R. 226 (Bond Motion at 1–2) (Page ID #543–44).

just punishment for the offense," "whether a lesser sentence would afford adequate deterren[ce] to this type of criminal conduct," and "whether a lesser sentence would serve to protect the public [from] future crimes of this Defendant." *Id.* at 40–41 (Page ID #3235–36). After considering the relevant § 3553(a) factors as applied to Ibarra, the district court concluded that a within-Guidelines sentence was appropriate and denied the motion for a downward variance. *Id.* at 43–44 (Page ID #3238–39). The district court then sentenced Ibarra to 148 months of imprisonment, a sentence just below the top end of her Guidelines range. *Id.* at 51 (Page ID #3246).

The district court entered its sentencing judgment as to Ibarra on February 22, 2024. R. 368 (Ibarra Judgment) (Page ID #2050–56). Ibarra timely appealed. R. 375 (Ibarra Notice of Appeal) (Page ID #2084).

### 4. Timbs

Prior to Timbs's sentencing, the Probation Office authored a PSR in which it calculated that Timbs was responsible for no less than 340.20 grams of methamphetamine (actual). R. 391 (Timbs PSR at ¶ 37) (Page ID #2221). This drug-weight calculation resulted in a base offense level of 30 and a total offense level—with various adjustments applied—of 25. *Id.* at ¶¶ 37, 42, 51 (Page ID #2221–22). Combined with a criminal history category of IV, Timbs's resultant Guidelines range was calculated as 84 to 105 months. *Id.* at ¶¶ 66, 101 (Page ID #2229, 2236).

Timbs filed an objection to the PSR, arguing that there were insufficient facts to support Probation's finding that he was responsible for over 340 grams of actual—or pure—methamphetamine, and that he should instead be responsible for distributing the same quantity of a mixture of methamphetamine. R. 381 (Timbs PSR Objection at 1) (Page ID #2127). Probation filed an addendum declining to adopt the objection, stating that Timbs had pleaded guilty to

conspiring to distribute methamphetamine (actual) and that Timbs had received his methamphetamine directly from Bland, who, based on discovery materials, physical evidence, and co-conspirator statements, had possessed and distributed nearly pure methamphetamine. R. 390 (PSR Addendum at 1) (Page ID #2209). At sentencing, the district court overruled the objection, explaining that logic and inference indicated that because Bland "dealt in actual methamphetamine" and "supplied the methamphetamine to the defendant here," "the methamphetamine that Mr. Timbs had was actual." R. 489 (Timbs Sent'g Tr. at 6) (Page ID #3291).

After considering the § 3553(a) factors, the district court sentenced Timbs to 84 months of imprisonment, a sentence at the lowest end of Timbs's Guidelines range. *Id.* at 19 (Page ID #3304). The district court entered a sentencing judgment on March 8, 2024, R. 412 (Timbs Judgment) (Page ID #2476–82), and this timely appeal followed, R. 423 (Timbs Notice of Appeal) (Page ID #2504).

## II.  DISCUSSION

In these consolidated appeals, defendants Bland, Ellis, Ibarra, and Timbs raise various constitutional and statutory challenges to their sentences. And defendants Bland, Ellis, and Ibarra each claim that their sentences are substantively unreasonable. We address each challenge in turn.

### A.  Conflicting Oral and Written Sentencing Judgments – Bland

We begin with Bland, whose first assignment of error is that the district court's written sentencing judgment impermissibly conflicted with its oral pronouncement of his sentence. Specifically, Bland alleges that the written judgment differed from the district court's oral pronouncement in two ways:  first, while the court had orally stated that Bland's sentences were

to run concurrently, the written judgment stated that the sentences were to run consecutively; and second, the written judgment named an additional place subject to search—namely, Bland's office—to Bland's special conditions of supervised release. "We review an alleged discrepancy between oral and written sentences de novo." *United States v. Booker*, 994 F.3d 591, 600 (6th Cir. 2021).

Generally, "[w]hen an oral sentence conflicts with the written sentence, the oral sentence controls." *Id.* (quoting *United States v. Denny*, 653 F.3d 415, 421 (6th Cir. 2011)). This is because "a defendant is present only when being sentenced from the bench," and "[b]ecause criminal punishment affects the most fundamental human rights[,] sentencing should be conducted with the judge and defendant facing one another and not in secret." *Id.* (quoting *Denny*, 653 F.3d at 421). The general rule does not apply, however, "where the record suggests a substantial possibility that the district court misspoke in an oral pronouncement regarding a portion of the sentence that was neither discussed nor disputed by the parties." *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000) (quoting *United States v. Jolly*, 129 F.3d 287, 289 (2d Cir. 1997)).

Here, the record clearly indicates that the district court misspoke in orally stating that Bland's sentences were to run concurrently. All parties agreed at sentencing that Bland's sentence under 18 U.S.C. § 924(c) was required by statute to run consecutively to Bland's sentence on the conspiracy charge. R. 479 (Bland/Ibarra Sent'g Tr. at 7, 17, 26) (Page ID #3202, 3212, 3221); *see* 18 U.S.C. § 924(c)(1)(D)(ii). In fact, Bland's attorney recognized on three separate occasions during Bland's sentencing that the firearm charge carried a mandatory, consecutive sentence. R. 479 (Bland/Ibarra Sent'g Tr. at 17, 19–20) (Page ID #3212, 3214–15) ("there is this mandatory, consecutive sentence"; the court was "going to give him a 60-month consecutive sentence for the

11

gun count"; "we've got this mandatory 60-month consecutive" sentence).  And the 228-month sentence that the district court ultimately pronounced required, mathematically, that Bland's 60-month sentence on the firearm charge run consecutively to his 168-month sentence on the conspiracy charge.  *Id.* at 51 (Page ID #3246).  In stating that Bland's sentences were to run concurrently instead of consecutively, the record demonstrates that the district court simply misspoke.

The district court was permitted to correct its misstatement within fourteen days of Bland's sentencing hearing under Federal Rule of Criminal Procedure 35(a), which permits a district court to "correct" an oral sentence "that resulted from arithmetical, technical, or other clear error." Bland's sentencing hearing was held on February 14, 2024, and his written judgment was entered on February 22, 2024, eight days later.  R. 479 (Sent'g Tr. at 1) (Page ID #3196), 370 (Judgment at 1) (Page ID #2061).  The district court therefore acted properly pursuant to Rule 35(a) in modifying its written judgment to correct its misstatement.  No reversible error occurred on this basis.

Bland also argues that the district court erred in modifying one of the special conditions of his supervised release by adding to the written judgment Bland's "office" in the list of places subject to search during his term of supervised release.  R. 370 (Bland Judgment at 5) (Page ID #2065).  Bland is correct that this differs slightly from the district court's oral pronouncement, which listed only Bland's "property, house, residence, vehicle, papers, [and] computers" as subject to search.  R. 479 (Bland/Ibarra Sent'g Tr. at 54) (Page ID #3249).  But the record once again reflects that the district court simply misspoke in announcing the special condition of supervised release at Bland's sentencing hearing.  The language of the PSR, which the district court adopted

in full, is the very same language that appears in the written judgment. R. 281 (Bland PSR at ¶ 157(c)) (Page ID #1469) ("The defendant shall submit his property, house, residence, vehicle, papers, [computers . . . ] or office, to a search conducted by a United States Probation Officer or designee."). The remaining language of the district court's oral pronouncement of the special condition mirrors the PSR exactly. *Id.*; *see* R. 479 (Bland/Ibarra Sent'g Tr. at 54) (Page ID #3249). And the language of the other special conditions that the district court imposed mirrors the language of the proposed special conditions contained in the PSR. R. 281 (Bland PSR at ¶ 157(a), (b)) (Page ID #1468); R. 479 (Bland/Ibarra Sent'g Tr. at 53–54) (Page ID #3248–49). The district court's written pronouncement thus controls. *Cofield*, 233 F.3d at 407. Additionally, the district court was well within its right to correct its misstatement via the written judgment within fourteen days of Bland's sentencing. Fed. R. Crim. P. 35(a). We therefore find no discrepancy between the district court's oral and written sentences that warrants reversal.[4]

## B. Impermissible Judicial Delegation – Bland

Bland's second assignment of error is that the district court imposed an unlawful supervised-release condition when it required Bland to "participate in a program of testing and/or treatment for drug and/or alcohol abuse, as directed by the probation officer, until such time as the defendant is released from the program by the probation officer." R. 370 (Bland Judgment at 5)

---

[4]Bland cites *United States v. Mudd*, 685 F.3d 473 (5th Cir. 2012), for the proposition that the district court's misstatement constitutes reversible error. In *Mudd*, the Fifth Circuit held that a district court erred when it announced an entirely different condition of supervised release at the defendant's sentencing hearing—that the court would "recommend drug and alcohol treatment instead of testing upon [Mudd's] release"—than appeared on the defendant's sentencing judgment—that Mudd would be required to participate in a drug treatment program. *Id.* at 480. The Fifth Circuit held that this discrepancy, which "broaden[ed] the restrictions of the oral pronouncement," warranted remand. *Id.* But *Mudd* is readily distinguishable from this case, where the record makes clear that the district court merely failed to read one word of a pre-written supervised-release condition into the record at Bland's sentencing hearing. This case does not present the type of impermissible conflict between an oral and written sentence that was present in *Mudd*, such that the out-of-Circuit case is inapposite to the case at bar.

13

(Page ID #2065). Bland argues that because the district court failed to set a cap on the number of drug tests that a probation officer could require, the special condition constitutes an improper delegation of judicial power to the Probation Office. We review de novo a defendant's challenge to a sentencing court's legal authority to impose a supervised-release condition on constitutional or statutory grounds. *United States v. Vaughn*, 119 F.4th 1084, 1087 (6th Cir. 2024).

Bland's argument is foreclosed by this court's precedent. In *Vaughn*, we held that an identically worded special condition of supervised release permissibly delegated the responsibility of implementing a sentencing condition to the Probation Office. *Id.* at 1088–89. There, the defendant argued that the district court's command that he "shall participate in a program of testing and/or treatment for drug and/or alcohol abuse as directed by the probation officer until such time as the defendant is released from the program by the probation officer" constituted an impermissible delegation of sentencing authority to the Probation Office, violating Article III of the Constitution. *Id.* at 1088. We disagreed, concluding that "[w]hen district courts decide to impose drug testing through a special condition, they fulfill their statutory and Article III duties so long as the court 'decide[s] whether treatment is required'" and may "leave program implementation to probation officers." *Id.* (alteration in original) (quoting *United States v. Carpenter*, 702 F.3d 882, 886 (6th Cir. 2012)). Here, as in *Vaughn*, the district court satisfied its responsibility in imposing Bland's sentence when it stated that Bland "must participate" in a program of drug testing or treatment. R. 281 (Bland Judgment at 5) (Page ID #2065).

Bland nevertheless argues that the special condition is impermissible because its language fails to couch the required drug and/or alcohol testing within the auspices of a drug or alcohol treatment program. But in making the argument that a district court may delegate to the Probation

Office only the authority to order drug or alcohol testing within the course of a treatment program, Bland misreads our precedent. In *Carpenter*, we differentiated between mandatory conditions of supervised release—which are mandated by statute—and special conditions, stating that "[o]nly for the former case must the district court specify the maximum number of drug tests." 702 F.3d at 886. Thus, we held that where a "district court impose[s] drug testing in connection with a special condition" of supervised release—as opposed to a statutorily mandated one—it is "not required to specify the number of drug tests [a defendant] must undergo." *Id.* *Carpenter* does not, as Bland argues, stand for the proposition that any drug or alcohol testing ordered pursuant to a special condition of supervised release must be couched within a drug or alcohol treatment program. *See, e.g.*, *United States v. Lindsay*, No. 24-5089, 2024 WL 4225715, at *2 (6th Cir. Sept. 18, 2024) (holding that an identical special condition, which was "best read as limited to treatment related to substance abuse," did not constitute an impermissible delegation of judicial authority). Instead, both *Carpenter* and *Vaughn* hold that a district court may require a defendant to submit to an unspecified course of drug or alcohol testing during a term of supervised release. Therefore, consistent with prior pronouncements of this court, we conclude that the at-issue special condition of supervised release poses no delegation problem. The district court did not err in imposing Bland's special conditions of supervised release as written.

## C. Minor-Role Adjustment – Ellis

Moving on from Bland, we next address Ellis's first challenge on appeal. Ellis argues that the district court erred in failing to grant him a two-point downward adjustment based on his allegedly minor role on the conspiracy. We review Ellis's preserved challenge for clear error. *United States v. Guerrero*, 76 F.4th 519, 533 (6th Cir. 2023); *see United States v. Mathis*, 738 F.3d

719, 739 (6th Cir. 2013) ("A factual conclusion is clearly erroneous only if, 'although there may be some evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" (quoting *United States v. Darwich*, 337 F.3d 645, 663 (6th Cir. 2003))). And the burden rests with Ellis "to demonstrate that he is entitled to a role reduction by a preponderance of the evidence." *Guerrero*, 76 F.4th at 533.

Pursuant to U.S.S.G. § 3B1.2(b), a district court should decrease a defendant's offense level by two levels "[i]f the defendant was a minor participant in any criminal activity." Prior to and at sentencing, Ellis argued that he was entitled to this adjustment because he was merely a "minor participant" in the conspiracy, claiming that he had acted "solely as a 'middleman' and did not possess any of the methamphetamine for which he [was] being held responsible." R. 415 (Ellis PSR Objections at 1–2) (Page ID #2488–89). By contrast, the government painted a picture of Ellis as a more culpable member of the conspiracy who "act[ed] as a direct middleman for [the conspiracy's leader] himself." R. 491 (Ellis Sent'g Tr. at 9) (Page ID #3321). Recognizing that its decision whether to grant Ellis a mitigating-role adjustment "is a fact-based determination . . . heavily dependent upon the facts of a particular case," the district court concluded that, "[i]n looking at all the facts in this case," Ellis was not entitled to the two-point reduction. *Id.* at 10 (Page ID #3322). But the district court then erroneously based its decision, at least in large part, on the fact that Ellis "ha[d] already received a lower offense level by virtue of the plea agreement, which allowed him to be convicted of a lesser included offense." *Id.*; *see* U.S.S.G. § 3B1.2(b), cmt. 3(B) (stating that the adjustment is not available "[i]f a defendant has received a lower offense level by virtue of being convicted of an offense significantly less serious than warranted by his

16

actual criminal conduct," because "such defendant is not substantially less culpable than a defendant whose only conduct involved the less serious offense"). Although Ellis had pleaded guilty to a lesser included offense, that did not make Ellis ineligible for the adjustment on that basis because Ellis did not receive a lower offense level pursuant to his plea.

Ellis argues that the district court's error entitles him to resentencing. But because we review the district court's decision for clear error, we must look to the entire record and determine whether we are "left with the definite and firm conviction that a mistake has been committed." *Mathis*, 738 F.3d at 739 (citation omitted). And "we may affirm on any grounds supported by the record, even if different from the reasons of the district court." *United States v. Gilbert*, 952 F.3d 759, 762 (6th Cir. 2020). In other words, we look to the record to determine whether the district court's error was harmless. *See United States v. Daneshvar*, 925 F.3d 766, 790 (6th Cir. 2019).

Here, the record evidence indicates that it was not clear error to find that Ellis's role in the conspiracy was such that he was not "substantially less culpable than the average participant" in the conspiracy. U.S.S.G. § 3B1.2, cmt. 3(A); *see also Guerrero*, 76 F.4th at 533. The application notes to U.S.S.G. § 3B1.2 set out a non-exhaustive list of factors to consider in determining whether a defendant warrants the adjustment, including

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, . . . [; and]

(v) the degree to which the defendant stood to benefit from the criminal activity.

17

U.S.S.G. § 3B1.2, cmt. 3(C). In Ellis's case, the record shows that Ellis understood the scope and nature of the conspiracy because he communicated directly with its leader, had a source of supply that was connected to higher-up members of the conspiracy, and personally met with methamphetamine purchasers. R. 443 (Ellis PSR at ¶ 70) (Page ID #2667). Ellis also admitted to setting up buyers with other sources, thus playing a role in facilitating and expanding the conspiracy. *Id.*; *see also id.* at ¶ 57 (Page ID #2662–63) (text messages in which Ellis encouraged another member of the conspiracy to "get in touch" with him because he had "dirt cheap prices"). Ellis personally participated in the sale of methamphetamine, admitting to selling methamphetamine on at least one occasion and that he was personally responsible for the distribution of 328.4 grams of a mixture of methamphetamine. *Id.* at ¶¶ 70, 73 (Page ID #2667, 2668). And Ellis stood to benefit from the criminal activity, because in addition to receiving money for the methamphetamine that he personally sold, Ellis received $20 for each transaction he facilitated. *Id.* at ¶ 70 (Page ID #2667).[5]

On the basis of this evidence, we conclude that, although the district court did err in its reasoning, its decision not to grant the adjustment was nevertheless not clearly erroneous. *See, e.g.*, *Daneshvar*, 925 F.3d at 790–91 (holding that, although "the district court erred in denying the defendant's role reduction request without elaboration on the record as to why the court found [the defendant] to be a 'major player,'" "the error was harmless because the evidence plainly demonstrated that [the defendant] was not a minor participant in the conspiracy"). The record here

---

[5]Ellis's argument hinges in large part on his contention that he was less culpable than many other members of the conspiracy. But even if that were the case, "merely having less authority than some other persons in an operation does not mandate a role reduction." *Guerrero*, 76 F.4th at 534.

supports a finding that Ellis was not a minor participant in the conspiracy. We therefore affirm Ellis's sentence on this ground.

**D. Drug Purity – Timbs**

We next address Timbs's sole assignment of error on appeal: that the district court erred in calculating Timbs's Guidelines based upon a drug-quantity computation that held him responsible for 340.20 grams of actual methamphetamine as opposed to a mixture of the substance. We review a sentencing court's drug-quantity determination for clear error. *United States v. Smith-Kilpatrick*, 942 F.3d 734, 746 (6th Cir. 2019).

The Sentencing Guidelines describe different varieties of methamphetamine: "methamphetamine (actual)" is pure methamphetamine; "ice" is "a mixture or substance containing [methamphetamine] of at least 80% purity"; and "methamphetamine" refers to "the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1(c), Notes to Drug Quantity Table (A)–(C). The Guidelines recommend higher offense levels for methamphetamine (actual) and ice because of their higher purity. In Timbs's case, the Probation Office determined that Timbs was responsible for 340.20 grams of methamphetamine (actual), resulting in a base offense level of 32. R. 391 (Timbs PSR at ¶ 37) (Page ID #2221); *see* U.S.S.G. § 2D1.1(c)(4). Had Probation found that Timbs was responsible for the same amount of a mixture of methamphetamine, Timbs's recommended base offense level would have been 26. U.S.S.G. § 2D1.1(c)(7).

Because no party could provide the exact purity of the drugs that Timbs had purchased and resold, the district court was required to make an estimate. "Where an exact drug [purity] cannot be established, a district court may make a reasonable . . . estimate if that estimate is supported by

the preponderance of the evidence." *United States v. Treadway*, 328 F.3d 878, 885 (6th Cir. 2003). In making an estimate of drug purity, a district court "may rely on any competent evidence in the record," although its "findings must have some minimum indicium of reliability beyond mere allegation." *Id.* at 884–85 (quoting *United States v. Hough*, 276 F.3d 884, 891 (6th Cir. 2002)); *see United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008) (stating that a district court may base its estimate "upon physical evidence (such as seized drugs) or testimonial evidence"). Because we review the district court's purity finding for clear error, "a district court's approximation . . . is not clearly erroneous if it is supported by competent evidence in the record." *Jeross*, 521 F.3d at 570.

Here, the record demonstrates that the district court did not clearly err in concluding that the government had carried its burden of proving that Timbs was responsible for 340.20 grams of actual methamphetamine. *See Treadway*, 328 F.3d at 884 ("At sentencing, the government bears the burden of proving the amount of drugs by a preponderance of the evidence."). In response to Timbs's objection to the drug purity finding both before and at sentencing, the government stated that Timbs had told police during his interview that his source was Bland, and that methamphetamine seized from Bland had been tested and confirmed as 93 percent pure. R. 489 (Timbs Sent'g Tr. at 4) (Page ID #3289); *see* R. 391 (Timbs PSR at ¶¶ 32, 35) (Page ID #2219–20). The government also noted that all of Timbs's co-conspirators who had thus far been sentenced had been found responsible for quantities actual methamphetamine. R. 489 (Timbs Sent'g Tr. at 5) (Page ID #3290). The district court's conclusion that "logic and inferences" dictated that Timbs was responsible for actual methamphetamine was based in record evidence—a lab test, testimonial statements from Timbs's co-conspirators, and Timbs's own statements—

that went "beyond mere allegation." *Treadway*, 328 F.3d at 885 (citation omitted). And because the district court's decision to overrule the objection was "supported by competent evidence in the record," it was not clearly erroneous. *Jeross*, 521 F.3d at 570.

Timbs nevertheless argues that the district court clearly erred because it extrapolated the purity of the entire quantity of drugs for which he was found responsible based on a small sample of the drugs seized from Bland. But we have endorsed the practice of extrapolating from a test sample "in circumstances where the government was able to demonstrate an 'adequate basis in fact for the extrapolation.'" *United States v. Jackson*, 470 F.3d 299, 310–11 (6th Cir. 2006) (quoting *United States v. Scalia*, 993 F.2d 984, 989 (1st Cir. 1993)). Here, the Probation Office based its extrapolation on the only evidence it had regarding the purity of the methamphetamine that Timbs purchased and resold: a lab test of a sample of the methamphetamine that his source, Bland, had possessed.[6] And although the district court could have refused to extrapolate from that evidence, finding instead that only a portion of the methamphetamine that Timbs bought and sold was pure, "[c]lear error will not be found where two permissible views of the evidence exist." *Jeross*, 521 F.3d at 570. The district court did not clearly err by electing a construction of the facts that followed from the available evidence. We therefore affirm the district court's drug-purity determination and Timbs's sentence.

---

[6]At sentencing, Timbs complained that there was "no scientific evidence, a lab report or something of that nature, of a quantity that was recovered from Mr. Timbs" himself, and that the government therefore could not prove that the methamphetamine in his possession had been pure. R. 489 (Timbs Sent'g Tr. at 6) (Page ID #3291). But law enforcement never recovered methamphetamine from Timbs himself; Timbs was in state custody when law enforcement interviewed him, and the record does not reflect any subsequent recovery of the drugs that Timbs admitted to buying and selling. R. 391 (Timbs PSR at ¶ 35) (Page ID #2220). The record therefore indicates that the government could not test any of the methamphetamine for which Timbs was personally responsible because that quantity could not be located.

**E. Procedural Reasonableness – Ibarra**

Next, we reach Ibarra's challenge to the procedural reasonableness of her sentence. "A district court procedurally errs by 'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence.'" *United States v. Mills*, 126 F.4th 470, 473–74 (6th Cir. 2025) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Ibarra argues that the district court erred in failing to consider one of the § 3553(a) factors—specifically, § 3553(a)(2)(D), which directs courts to consider the need for the sentence imposed "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"—because the court concluded that it was prohibited by law from doing so.

We generally review procedural reasonableness challenges "under the deferential abuse-of-discretion standard." *Mills*, 126 F.4th at 474. The government, however, argues that Ibarra either waived or forfeited her argument by failing to object to the district court's error below, or even invited the error by agreeing with the district court's error, such that we should decline to consider Ibarra's argument or apply a more stringent standard of review. *See United States v. Carter*, 89 F.4th 565, 568 (6th Cir. 2023) ("We do not consider waived arguments because the waiving party has conceded that there is no error to review."); *id.* ("We review forfeited arguments . . . only for plain error."); *id.* ("[W]e sometimes—albeit rarely—review invited errors to prevent 'manifest injustice.'" (alteration in original) (quoting *United States v. Akridge*, 62 F.4th 258, 263 (6th Cir. 2023)). We need not address the government's waiver, forfeiture, or invited error

arguments because, even if the district court did abuse its discretion in failing to consider § 3553(a)(2)(D), the district court's error was harmless.[7]

Prior to and at sentencing, Ibarra specifically requested a downward variance on the basis that a lower sentence was needed to provide her with the appropriate mental-health and substance-abuse care. R. 304 (Ibarra Sent'g Memo at 10–11) (Page ID #1629–30) (arguing that a variance was warranted pursuant to § 3553(a)(2)(D) because "the most effective manner of treatment for her is inpatient and outpatient substance abuse treatment followed by ongoing monitoring and community support"); R. 479 (Bland/Ibarra Sent'g Tr. at 35–37) (Page ID #3230–32). The district court rejected Ibarra's reliance on § 3553(a)(2)(D), concluding that "the Supreme Court has indicated that by providing a Defendant with . . . medical or other correction[al] treatment, is not an appropriate consideration in deciding a prison sentence." R. 479 (Bland/Ibarra Sent'g Tr. at 40) (Page ID #3235).[8] But the district court nevertheless considered Ibarra's arguments in the context of her "history and characteristics." *Id.* In fact, the district court opined at length on Ibarra's conduct while on bond, her successful completion of inpatient and outpatient drug treatment programs, and her history of mental illness and substance abuse, concluding that Ibarra's "particular history and characteristics . . . are very compelling." *Id.* at 43–44 (Page ID #3238–39). And the district court took Ibarra's arguments into account, agreeing with Ibarra that she was less likely than "many other Defendants" to commit "other crimes in the future." *Id.* at 41 (Page ID

---

[7]Focusing instead on its waiver, forfeiture, and invited error arguments, the government neglects to address harmless error. But "it is within our discretion to consider harmless error sua sponte." *United States v. Butts*, 40 F.4th 766, 774 (6th Cir. 2022).

[8]While it did not name a specific case, the district court was referring here to *Tapia v. United States*, 564 U.S. 319 (2011), in which the Supreme Court held that "a court may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation." *Id.* at 335.

#3236). Only after considering Ibarra's arguments in the context of the rest of the § 3553(a) factors did the district court conclude that a within-Guidelines sentence was appropriate. *Id.* at 44 (Page ID #3239).

We do not now decide whether the district court erred as a matter of law in concluding that it lacked the authority to consider Ibarra's treatment needs in determining whether to vary downward from her Guidelines range.[9] Even if the district court made a legal error, it nevertheless considered each of Ibarra's arguments in favor of leniency in the context of her personal history and characteristics. And it incorporated those arguments into its ultimate determination that, based on the combined § 3553(a) factors, a within-Guidelines sentence was warranted.

We therefore conclude that the district court's error, if there was any, was harmless. "[A] remand for an error at sentencing is required unless we are certain that any such error was harmless—*i.e.* any such error 'did not affect the district court's selection of the sentence imposed.'" *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005) (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)). "The burden rests with the government to 'demonstrate to the [c]ourt *with certainty* that the error at sentencing did not cause the defendant to receive a more severe sentence.'" *Butts*, 40 F.4th at 774 (alteration in original) (quoting *United States v.*

---

[9]The *Tapia* Court, we note, left open this question for another day. In a footnote, the Court acknowledged the government's argument that "Congress did not intend to prohibit courts from imposing *less* imprisonment in order to promote a defendant's rehabilitation." *Tapia*, 564 U.S. at 329 n.5. But the Court stated that the case before it "d[id] not require [the Court] to address that question, and nothing in [the Court's] decision expresses any views on it." *Id.* Nor, as the government argues, does any "binding precedent" of this court suggest that the holding of *Tapia* extends to bar courts from considering rehabilitation and treatment in deciding whether to vary downward. Appellee Br. at 25 (citing *United States v. Rucker*, 874 F.3d 485, 488 (6th Cir. 2017) (applying *Tapia* where a district court improperly considered a residential drug abuse program in electing a within-Guidelines sentence); *United States v. Reynolds*, 534 F. App'x 347, 369–70 (6th Cir. 2013) (holding that a district court did not err in failing to consider rehabilitation in selecting a carceral sentence)). Whether a court may consider a defendant's educational, vocational, medical, or other treatment needs in deciding to reduce a defendant's sentence is a question that remains unresolved in our court.

*Ziesel*, 38 F.4th 512, 519 (6th Cir. 2022)). Here, we are convinced that the district court's refusal to consider Ibarra's medical treatment needs in the context of § 3553(a)(2)(D) did not result in a more severe sentence, because the district court considered the exact same circumstances in the context of Ibarra's personal history and characteristics. And the district court specifically noted the "compelling" nature of Ibarra's longstanding mental-health and substance-abuse issues, as well as her successful completion of treatment while on bond, in selecting the appropriate sentence. R. 479 (Bland/Ibarra Sent'g Tr. at 43–44) (Page ID #3238–39). The district court's alleged error therefore did not prevent it from considering any of the arguments that Ibarra raised in arguing for a downward variance. And because the alleged error did not cause the district court to discard any relevant arguments or evidence, we conclude that "the district court would have imposed the same sentence had it not" committed the alleged error. *Williams*, 503 U.S. at 203. The district court's alleged error in selecting Ibarra's sentence, if any, was harmless, and she is not entitled to remand.

## F. Substantive Reasonableness – Bland, Ellis, Ibarra

Finally, three defendants—Bland, Ellis, and Ibarra—challenge the substantive reasonableness of their sentences. A sentence is substantively unreasonable where "the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). "We review the substantive reasonableness of a sentence for abuse of discretion, with the ultimate inquiry being whether the district 'court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual.'" *United States v. Zabel*, 35 F.4th 493, 504–05 (6th Cir. 2022) (quoting *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018)). And "[w]e presume a within-

Guidelines sentence is substantively reasonable." *United States v. Gardner*, 32 F.4th 504, 530 (6th Cir. 2022).

### 1. Bland

Bland argues that his 228-month sentence is substantively unreasonable because the district court failed to consider the 60-month mandatory minimum accompanying his § 942(c) charge in fashioning an appropriate sentence and placed too much weight on certain of the § 3553(a) factors and too little on others. As an initial matter, we afford Bland's within-Guidelines sentence a presumption of reasonableness. *Gardner*, 32 F.4th at 530. At the same time, "[t]he sentencing judge may not presume that the guidelines range is reasonable, but must consider all of the relevant § 3553(a) factors and impose a sentence that is 'sufficient but not greater than necessary' to comply with the purposes of § 3553(a)(2)." *Conatser*, 514 F.3d at 520 (quoting *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006)).

First, Bland raises a specific allegation of legal error: that the district court erroneously concluded it was unable to reduce Bland's overall sentence upon consideration of the mandatory consecutive 60-month sentence accompanying Bland's firearm charge. It appears that the district court either misunderstood Bland's argument in favor of reducing his sentence on the conspiracy count or erroneously concluded that it was unable to reduce Bland's sentence upon consideration of the mandatory 60-month consecutive sentence for the firearm count. In *Dean v. United States*, 581 U.S. 62 (2017), the Supreme Court held that a district court may reduce a defendant's sentence on the underlying predicate offense accompanying a § 924(c) charge to account for the mandatory consecutive sentence. *Id.* at 71 (concluding that the language requiring a mandatory minimum under § 924(c) does not "prevent[] a sentencing court from considering [that] mandatory minimum

. . . when calculating an appropriate sentence for the predicate offense"). At Bland's sentencing, when the district court asked Bland's counsel if he was arguing that, "since Congress has said I've got to receive this extra sentence here, then I should get a reduction in my guidelines," counsel responded that "that's exactly what the Supreme Court says you're allowed to do." R. 479 (Bland/Ibarra Sent'g Tr. at 20) (Page ID #3215).[10] The district court ultimately concluded that it "believe[d] that reducing the guidelines because of [the mandatory consecutive sentence accompanying § 924(c)] would run afoul of the obvious purpose of Congress in passing 924(c)." *Id.* at 27 (Page ID #3222).

Bland argues that this apparent error renders his sentence substantively unreasonable. But *Dean* merely permits district courts to reduce a defendant's sentence on a predicate offense "whenever they think a mandatory minimum under § 942(c) is already punishment enough." 581 U.S. at 71. *Dean* does not require district courts to do so. And while the district court appears to have either misapprehended or been unfamiliar with *Dean*, the rest of the transcript reflects the court's clear belief that Bland's Guidelines sentence, including the 60-month mandatory consecutive sentence on the § 942(c) count, was appropriate given the specific circumstances of Bland's case. Any error on the district court's part was therefore cured by its clear determination that Bland's Guidelines range, regardless of the mandatory 60-month consecutive sentence, was no greater than necessary to achieve the purposes of sentencing in Bland's case.

---

[10]Although neither party nor the district court identified *Dean* by name at sentencing, nor did Bland raise this specific argument in his objections to the PSR, it is clear from the record that defense counsel's statement at sentencing was in reference to the Supreme Court's decision in *Dean*.

Second, with respect to Bland's argument that the district court inappropriately weighed the § 3553(a) factors, the record reflects that the district court considered a variety of the § 3553(a) factors in concluding that a sentence at the lowest end of Bland's Guidelines range was appropriate. The district court considered Bland's appeal to national sentencing statistics, stating that while it "appreciate[d] the national statistics, [] studied them, [] th[ought] about them," it was nevertheless "looking at a person in front of me with a unique life story, with a specific way of committing a crime" and had "specific goals for that person that may or may not conform to what other judges are doing." *Id.* at 24–25 (Page ID #3219–20). And the district court considered Bland's argument that his sentence should be reduced in order to incentivize voluntary confessions because Bland's drug-weight calculation stemmed in large part from his voluntary statements to police, determining that, "although there [was] some appeal to the argument," it would trust that the Probation Office's calculation was accurate. *Id.* at 22–24, 27–29 (Page ID #3217–19, 3222–24). Prior to announcing Bland's sentence, the district court listed each of the § 3553(a) factors that it was considering in fashioning an appropriate sentence. *Id.* at 32–33 (Page ID #3227–28). The district court then considered the need for the sentence to reflect the seriousness of the offense and promote respect for the law, emphasizing the large scale of the conspiracy and the "devastating effect illegal drugs ha[ve] on our community and the nation as a whole," concluding that Bland's was "a very serious offense and the punishment should reflect the seriousness of the offense." *Id.* at 33 (Page ID #3228). Stating that "[t]he sentences the court is going to impose are pursuant to Section 3553" and "sufficient to fulfill all of the 3553 factors," the district court sentenced Bland to 228 months of imprisonment. *Id.* at 51 (Page ID #3246).

28

Bland argues that the district court adhered too rigidly to Bland's Guidelines range while under-weighing certain of the § 3553(a) factors, including Bland's acceptance of responsibility and the need to avoid unwarranted sentencing disparities. But the record at sentencing does not reflect that the district court gave unreasonable weight to any one factor; instead, it reflects that the district court considered each of Bland's arguments in favor of leniency, as well as the several § 3553(a) factors, and concluded that a low-end Guidelines sentence would be sufficient but not greater than necessary[11] to fulfill the purposes of sentencing. Nor was the district court required to weigh each § 3553(a) factor equally, or to give certain factors the weight that Bland would have preferred. *See United States v. Gates*, 48 F.4th 463, 478 (6th Cir. 2022) (stating that "a sentence is not necessarily substantively unreasonable because a court places greater weight on some factors than others"). We therefore conclude that Bland's 228-month sentence is substantively reasonable.

## 2. Ellis

Like Bland, Ellis argues that his sentence is substantively unreasonable because the district court placed too much weight on certain of the § 3553(a) factors and too little weight on others. Again, we afford Ellis's within-Guidelines sentence of 92 months—a sentence at the lowest end of Ellis's Guidelines range—a presumption of reasonableness. *Gardner*, 32 F.4th at 530.

According to Ellis, the district court failed adequately to consider several pertinent § 3553(a) factors, including Ellis's personal history and characteristics and allegedly limited

---

[11]At sentencing, the district court again misspoke when announcing Bland's sentence, stating that the sentence it was about to impose was "greater than necessary to fulfill those purposes." R. 479 (Bland/Ibarra Sent'g Tr. at 51) (Page ID #3246). Bland argues that this misstatement constitutes error. Bland Br. at 18. But the record once again reflects that the district court's misstatement was just that; earlier in the hearing, the district court acknowledged its duty to impose a sentence "no greater than necessary." *Id.* at 34 (Page ID #3229). We therefore view the district court's statement as a mere slip of the tongue that does not render Bland's sentence unreasonable.

involvement in the conspiracy. But the record reflects that the district court did consider Ellis's personal history and characteristics: after hearing Ellis's allocution, the district court addressed Ellis directly about his criminal history and familial situation. R. 491 (Ellis Sent'g Tr. at 15–18) (Page ID #3327–30). Yet the district court concluded that other factors—namely, "the seriousness of the offense, the need to protect the public, and . . . the likelihood that the defendant may commit future crimes"—counseled a within-Guidelines sentence. *Id.* at 14–15 (Page ID #3326–27).

Essentially, Ellis argues that "the district court should have balanced the § 3553(a) factors differently." *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008). But such a contention is "simply beyond the scope of our appellate review, which looks to whether the sentence is reasonable, as opposed to whether in the first instance we would have imposed the same sentence." *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006). Our review reveals that the district court acted reasonably in considering the arguments from both parties, articulating its consideration of a number of the § 3553(a) factors, and concluding that a low-end Guidelines sentence was appropriate. We therefore conclude that Ellis's sentence is substantively reasonable.

### 3. Ibarra

Ibarra, too, argues that her sentence is substantively unreasonable. But Ibarra's argument is not that the district court improperly weighed the § 3553(a) factors against each other, but rather that the district court failed entirely to consider her treatment needs pursuant to § 3553(a)(2)(D). *See Gardner*, 32 F.4th at 530 (stating that a sentence may be substantively unreasonable "if a district court . . . ignored pertinent § 3553(a) factors"). Once more, we afford Ibarra's within-Guidelines sentence of 148 months a presumption of reasonableness. *Id.*

Ibarra is correct that the district court failed to consider the need to provide her with substance-abuse and mental-health treatment in determining whether to grant a downward variance, because the court concluded that it was barred from doing so. But, as discussed above, the district court did address Ibarra's treatment history and needs, albeit under the umbrella of her personal history and characteristics. The district court found Ibarra's substance-abuse and mental-health histories, as well as her completion of a drug treatment program while on bond, "very compelling." R. 479 (Bland/Ibarra Sent'g Tr. at 43) (Page ID #3238). And in announcing its sentence, the district court recommended that Ibarra "receive a mental health evaluation on [her] arrival at the Bureau of Prisons" and that she "receive any treatment that is recommended." *Id.* at 52 (Page ID #3247). Ibarra thus "does not identify any argument that [s]he raised and the district court failed to address." *Ely*, 468 F.3d at 404. Instead, she "asks us to balance the factors *dif[f]erently* than the district court did." *Id.* (emphasis in original). But that we do not do. We conclude that the district court considered each of Ibarra's sentencing arguments and made the decision to impose a within-Guidelines sentence based upon its rational evaluation of the § 3553(a) factors. Ibarra's sentence is thus substantively reasonable.

## III. CONCLUSION

For the foregoing reasons, we do not find reversible error in any of the district court's sentencing decisions with respect to Bland, Ellis, Ibarra, or Timbs. We therefore **AFFIRM** the sentences of all four defendants.